## SALTONSTALL  v.  BIRTWELL.

### CERTIORARI  TO  THE  CIRCUIT  COURT  OF  APPEALS  FOR  THE  FIRST CIRCUIT.

No. 257.  Argued April 24, 27, 1896.—Decided October 26, 1896.

In 1888, when the goods were imported to recover back the duties paid upon which this action was brought, a right of action accrued to an importer if he paid the duties complained of in order to get possession of his merchandise, and if he made his protest, in the form required, within ten days after the ascertainment and liquidation of the duties.

IN October, 1888, Joseph Birtwell brought an action in the Circuit Court of the United States for the District of Massachusetts, against Leverett Saltonstall, collector of the customs for the revenue district of Boston, to recover excess of duties paid under protest on importations.   The trial resulted in a judgment for Birtwell, which was brought on error to this court, where the same was reversed and the case was returned to the Circuit Court for a new trial.   150 U. S. 417.

In June, 1894, the case was again called for trial in the Circuit Court, and again resulted in a judgment for Birtwell. The case then went, by writ of error, to the United States Circuit Court of Appeals for the First Circuit, which court affirmed the judgment of the Circuit Court.

In April, 1895, the cause was removed into the Supreme Court by virtue of a writ of *certiorari.*   The return to the writ set forth a stipulation between the counsel for the respective parties that the certified copy of the record of the cause in the Circuit Court of Appeals for the First Circuit, on file in the Supreme Court, should be treated as the return to the writ.   That record discloses that, at the trial in the Circuit Court, the following proceedings took place :

"It is hereby agreed that trial by jury may be waived in the above-entitled case, and that the same may be tried and determined by the court without the intervention of a jury, as

provided in sects. 649 and 700 of the Revised Statutes of the United States.

"J. P. TUCKER,
"*Attorney for Plaintiff.*
"SHERMAN HOAR,
"*Attorney for Defendant and United States Attorney.*

"Issue being joined, this cause came on to be heard by the court, the Honorable Le Baron B. Colt, Circuit Judge, sitting.

"On October 2, 1894, at the time of the hearing the following admission on the part of the defendant is filed :

"It is hereby admitted that the 432 pieces of iron and the four pieces of iron — the proper classification of which for duty under the tariff act of March 3, 1883, is in question in the above-entitled case — are for the purposes of this case, and for this case alone, 'manufactures not specially enumerated or provided for in' said 'act, composed wholly of iron,' within the meaning of schedule C (paragraph 216, Treasury Compilation) of said act, and are subject to duty under said paragraph at the rate of forty-five per centum ad valorem.

"This admission as to the classification and nature of said pieces of iron is made to apply to this case and to this case alone, and the United States and the defendant are not to be estopped or prejudiced thereby in any other case whatsoever.

"SHERMAN HOAR,
"*United States Attorney.*

"At the same time the following motion for finding is filed by defendant:

"The defendant moves the court to rule that on all the evidence in this case, including the written admission of the defendant now on file in said case, the plaintiff has failed to prove his case, inasmuch as he has failed to show that he paid to the defendant under protest, and for the purpose of obtaining his merchandise, according to the provisions of law in

force at the time of his importation, the duties he now seeks to recover.

"And said defendant moves the court to rule that on all the evidence in this case, including the aforesaid admission of the defendant, the plaintiff has failed to prove his case, inasmuch as he has failed to show that he complied with the provisions of law relative to protest, in force at the time of his said importation.

"And said defendant moves the court to rule that on all the evidence in this case, including the aforesaid admission of the defendant, the plaintiff has failed to prove his case.

"And the defendant moves also that the court find generally for him.

"SHERMAN HOAR, .
"*United States Attorney.*


"Said motion is thereupon overruled by the court and judgment ordered to be entered for the plaintiff.

"On the thirteenth day of October the following findings of fact are filed by the court:

"The court finds the following facts:

"1. That on Feb. 27, 1888, the plaintiff, Joseph Birtwell, imported ex steamship 'Jan Breydel,' from a foreign country into the port of Boston, and entered at the custom-house at said port, certain iron, described in the entry as '432 pieces in manufactures of iron for the third floor of the Boston court-house,' drilled and fitted complete, as required by plan, and painted.

"2. That on the fourteenth day of March, 1888, the said plaintiff imported ex steamship 'Petre De Connick,' from a foreign country into port of Boston, and entered at the custom-house in said Boston, certain iron, described in the entry as '4 riveted girders in iron, complete framing of third floor of Boston court-house.'

"3. That the defendant, collector of said port of Boston, estimated the duties on both of said importations under the provision of schedule C of the tariff act of March 3, 1883, which reads as follows: 'Iron or steel beams, girders, joists,

angles, channels, car-truck channels, TT, columns and posts, or parts or sections of columns and posts, deck and bulb beams, and building forms, together with all other structural shapes of iron or steel, one and one-fourth of one cent per pound.'

"4. That on Feb. 29, 1888, subsequently to said estimation of duties, for the purpose of obtaining said 432 pieces of iron, the plaintiff paid duties thereon at the rate exacted by the defendant, amounting to the sum of $2889.29.

"5. That on March 14, 1888, subsequently to said estimation of duties, for the purpose of obtaining said four pieces of iron, the plaintiff paid duties thereon at the rate exacted by the defendant, amounting to the sum of $166.75.

"6. That the plaintiff actually obtained said 432 pieces of iron and said four pieces of iron at the time when he paid the estimated duties thereon, respectively.

"7. That on the fourth day of April, 1888, the defendant collector liquidated the duties on said 432 pieces of iron at the same rate and under the same provisions of law at which he had estimated said duties; and on the tenth day of April, 1888, said collector liquidated the duties on said four pieces of iron at the same rate and under the same provisions of law at which he had estimated said duties.

"8. That on the fourth day of April, 1888, the plaintiff filed with the defendant collector a protest in writing, setting forth distinctly and specifically the grounds of his objection to the rate of duty at which the duties on said 432 pieces of iron had been liquidated by the defendant collector; and on the tenth day of April, 1888, the plaintiff filed with the defendant collector a protest in writing, setting forth distinctly and specifically the grounds of his objection to the rate of duty assessed by the collector upon said four pieces of iron, and in each of said protests the plaintiff claimed that said 432 pieces of iron and said four pieces of iron, respectively, were dutiable under that portion of schedule C of the tariff act of 1883, which is in the words following : 'Manufactures, articles or wares not specially enumerated or provided for in this act, composed wholly or in part of iron, steel, cop-

per, lead, nickel, pewter, tin, zinc, gold, silver, platinum, or any other metal, and whether partly or wholly manufactured, forty-five per cent. ad valorem;' and these protests were the only written protests filed by the plaintiff with the defendant in this case.

"9. The plaintiff took an appeal from the decision of the defendant collector on both the said importations to the Secretary of the Treasury within due time, and the Secretary of the Treasury having sustained the defendant collector in both cases, the defendant brought this suit in due time, and filed with the attorney of the defendant a bill of particulars in compliance with the requirements of section 3012 of the Revised Statutes of the United States.

"10. I find as a fact that in connection with his testimony as to making entries of said importations the plaintiff testified: 'I deposited what they demanded under protest.'

"11. On the question of the nature and dutiable character of said 432 pieces of iron and said four riveted girders of iron, there being on record in said case an admission of the defendant in the following language:

"'It is hereby admitted that the 432 pieces of iron and the four pieces of iron — the proper classification of which for duty, under the tariff act of March 3, 1883, is in question in the above-entitled case — are for the purposes of this case, and for this case alone, "manufactures not specially enumerated or provided for in" said "act, composed wholly of iron," within the meaning of paragraph 216 of said act, and are subject to duty under said paragraph at the rate of forty-five per centum ad valorem.

"'This admission as to the classification and nature of said pieces of iron is made to apply to this case and to this case alone, and the United States and the defendant are not to be estopped or prejudiced thereby in any other case whatsoever;' I find that said 432 pieces of iron and said four pieces of iron were dutiable at the rate of forty-five per centum ad valorem, as claimed by the plaintiff.

"12. The value of said 432 pieces of iron was $2647; the value of said four pieces of iron was $216; and the excess of

duties paid over duties due is, on said 432 pieces of iron, $1698.14, and on said four pieces of iron, $69.55.

" 13. The court finds that the plaintiff is entitled to recover the sum of $1767.69, and interest from the date of the writ and costs.

"Le Baron B. Colt,

" *Circuit Judge.*

" On the same day the following bill of exceptions is allowed and ordered to be filed :

" This was an action to recover the amount of certain duties alleged to have been illegally exacted of the plaintiff by the defendant, collector of the port of Boston, upon certain pieces of iron imported by the plaintiff into said port in the year 1888. The pleadings in the case are hereby referred to and made a part of this bill of exceptions. The parties, by their attorneys of record, filed with the clerk a stipulation in writing, waiving a jury. This case came on to be heard before the Honorable Le Baron B. Colt, Circuit Judge, at the May term, 1894.

" The court made thirteen special findings of fact, which are hereby referred to and made a part of this bill of exceptions.

" Joseph Birtwell, the first witness called by the plaintiff, testified that on February 27, 1888, he imported from Antwerp by the steamship Jan Breydel, into the port of Boston, and entered at the custom-house at said port, 432 pieces of manufactures of iron; and that on the fourteenth day of March, 1888, he imported from Antwerp by the steamship Petre De Connick, into said port of Boston, and entered at the custom-house at said port, four riveted girders.

" By agreement of counsel, naval office copies produced by the witness Birtwell of the entries of said two lots of iron, and triplicate copies of the consular invoices thereof offered by him in evidence, were admitted in lieu of the originals, or collector's copies.

" The witness Birtwell then further testified that on the date of importation and entry, in the case of each of said two

lots of iron, the defendant collector estimated the duties thereon at one and one-quarter cents per pound, and the third finding of fact of said Circuit Court shows that said estimation was under that provision of schedule C of the tariff act of March 3, 1883, which reads as follows: ' Iron or steel beams, girders, joists, angles, channels, car-truck channels, TT, columns and posts, or parts or sections of columns and posts, deck and bulb beams, and building forms, together with all other structural shapes of iron or steel, one and one-fourth of one cent per pound.' He further testified that on February 29, 1888, for the purpose of obtaining said 432 pieces of iron, he paid the duties estimated thereon by the defendant collector, amounting to the sum of $2889.29, and that on March 14, 1888, for the purpose of obtaining said four riveted girders, he paid the duties estimated thereon by the defendant, amounting to the sum of $166.75, and that he actually obtained said 432 pieces of iron and said four riveted girders at the times when he paid the estimated duties thereon, respectively.

" From one of the entries referred to above, offered by the plaintiff and received in evidence, it appeared that the defendant collector liquidated the duties on said 432 pieces of iron on the fourth day of April, 1888, at the same rate and under the same provisions of law at which he had estimated said duties; and from the seventh finding of fact of said Circuit Court, it appears that on the tenth day of April, 1888, the defendant collector liquidated the duties on said four riveted girders at the same rate and under the same provisions of law at which he had estimated said duties.

" The examination of the witness Birtwell was then suspended, and the plaintiff called Miss Clara Kenrick. She testified that she had for many years been the protest clerk in the custom-house at the port of Boston, and was said clerk during the year 1888, and that it was her duty to receive and care for protests filed by importers against the rate of duty exacted by the collector of said port upon their importations of merchandise.

" The entries of the plaintiff of the two lots of merchandise

in question, referred to above, were then shown to Miss Kenrick and identified by her as naval office copies of the entries made by the plaintiff of the two lots of merchandise in question, and the stamps thereon, showing the dates of payment of the estimated duties and of the liquidation, were explained by the witness, corroborating the witness Birtwell, to mean what has been stated above.

" The witness was then asked : ' What is understood by the custom-house clerks as the liquidation of an entry ? ' She testified : ' Well, the duties are figured on the entry and the entry goes to the naval office for examination, then comes back to another clerk, who puts the stamp on — " liquidated " — and completes the liquidation.'

" Two papers were then handed to the witness by the attorney for the plaintiff, and she was asked if there was anything upon them to show when they were filed at the custom-house. She testified that there were stamps upon each of said papers indicating the dates, respectively, at which they were received at the custom-house. She further testified that the date upon one of the papers which related to the plaintiff's importation of said 432 pieces of iron by the steamship Jan Breydel was April 4, 1888, and that the date upon the other paper which related to the plaintiff's importation of said four riveted girders by the steamship Petre De Connick was April 10, 1888, and she testified that said papers were the protests in writing filed by the plaintiff with the defendant collector against the rate of duty exacted by him upon said importations.

" She was then asked the following question by the counsel for the plaintiff : ' What were your duties in relation to protests filed at that time, so far as the time within which and when they should be filed was concerned ? ' The question was objected to by the counsel for the defendant, but the court overruled the objection and permitted the witness to answer, and the defendant then and there duly excepted.

" The answer of the witness to said question was as follows : ' The instructions of the department as to when protests should be received have varied from time to time. At some times we have been instructed to receive them at any time from the

date when the entry was made up to the end of ten days after liquidation.   At other times we have been instructed to receive them only within ten days after liquidation.'

"The witness was then asked by the counsel for the plaintiff the following question : ' Can you, from your memory, tell which of those practices was in vogue at this time in 1888 ? ' Her reply was, 'I think the last one.'   The witness then testified further that she was the clerk who received protests ; that she made certain entries in a book regarding them, giving the place from which the goods were imported, the date when the protests were received, the name of the importer, and the subject of the protest and appeal ; the name of the vessel, the date of entry, whether the entry is duty-paid or bonded, the date of liquidation and the date of filing the protest and appeal, and then it was her duty to send the protest to the deputy collector of customs ; that the protests were required to be filed in duplicate, and that the original protest and appeal are sent to the deputy collector of customs and the duplicate protest retained by the witness ; and that the original protest and appeal are afterwards sent by the deputy collector to the Secretary of the Treasury at Washington ; that in some cases the deputy collector of customs sent protests to the appraisers and did not send protests to the Secretary of the Treasury, unless the report of the appraisers confirmed the decision of the collector, and that the decision of the Secretary of the Treasury upon protests and appeals is sent to the collector of customs from whom they have been received.

"The witness then identified two papers as the appeals to the Secretary of the Treasury filed by the plaintiff with the defendant collector in the matter of the decision of the defendant as to the rate of duty chargeable upon defendant's [?] said two importations.

"Up to this point the papers containing the protests and appeals referred to above had not been formally offered in evidence by the plaintiff.   Counsel for the plaintiff then formally offered in evidence the two papers identified by the witnesses Birtwell and Kenrick as the protest filed by the plaintiff with the defendant collector against the rate of duty

exacted by the defendant upon the plaintiff's said two importations of iron.

"The papers were objected to by the attorney for the defendant on the ground that, from the testimony in the case and from the dates stamped upon said papers, it appeared that they had been filed by the plaintiff with the defendant collector too late to be good and valid protests under the law in force at the time of said importations; but the court overruled the objection and admitted the papers, whereupon the defendant then and there duly excepted.

"It is not deemed necessary to set out said two papers verbatim, inasmuch as the only objection to their admission was the objection just stated, it being conceded by the defendant that said papers complied with the provisions of law regarding protests in all respects, except the time at which they were filed with said defendant collector. Miss Kenrick then gave further testimony which, however, is not material for the purpose of this bill of exceptions.

"At this point the defendant placed on file an admission in writing in the words following:

"'It is hereby admitted that the 432 pieces of iron and the four pieces of iron — the proper classification of which for duty under the tariff act of March 3, 1883, is in question in the above-entitled case — are for the purposes of this case and for this case alone, "manufactures not specially enumerated or provided for in" said "act, composed wholly of iron," within the meaning of schedule C (paragraph 216, Treasury Compilation) of said act, and are subject to duty under said paragraph at the rate of forty-five per centum ad valorem.

"'This admission as to the classification and nature of said pieces of iron is made to apply to this case and to this case alone, and the United States and the defendant are not to be estopped or prejudiced thereby in any other case whatsoever.'

"The four pieces of iron referred to in said admission are what are referred to herein as four riveted girders.

"On cross-examination, the witness Kenrick testified that she had no personal knowledge whatever in regard to the

practice at any time at other ports than the port of Boston in the matter of the time of receiving protests.

" The examination of the witness Birtwell was then resumed, but his further testimony contained nothing material for the purpose of this bill of exceptions.

" Upon the conclusion of the plaintiff's evidence, and after the plaintiff had rested, the counsel for the defendant stated that he had no evidence to offer on behalf of the defendant, and thereupon rested.

" The counsel for the defendant then filed a motion in writing in the words following :

" ' The defendant moves the court to rule that on all the evidence in this case, including the written admission of the defendant now on file in said case, the plaintiff has failed to prove his case, inasmuch as he has failed to show that he paid to the defendant under protest, and for the purpose of obtaining his merchandise according to the provisions of law in force at the time of his importation, the duties he now seeks to recover;

" ' And said defendant moves the court to rule that on all the evidence in this case, including the aforesaid admission of the defendant, the plaintiff has failed to prove his case, inasmuch as he has failed to show that he complied with the provisions of law relative to protest in force. at the time of his said importations.

" ' And said defendant moves the court to rule that on all the evidence in this case, including the aforesaid admission of the defendant, the plaintiff has failed to prove his case.

" ' And the defendant moves also that the court find generally for him.'

" The court overruled the motion and the defendant duly excepted.

" This bill of exceptions having been tendered for signature and allowance to the judge presiding at said cause at the same term of court at which said special findings were rendered, and within the time allowed by the court therefor, the same is now hereby signed and allowed as a further statement of

the exceptions taken and reserved by the said defendant at the said trial, and is hereby made a part of the record in the said cause.

"The within bill of exceptions is allowed this twelfth day of October, 1894.

"LE BARON B. COLT,
"*Circuit Judge.*

"Also on the same day the following judgment is entered:

"It is thereupon considered by the court, to wit, Oct. 13, 1894, the Honorable Le Baron B. Colt, Circuit Judge, sitting, that the said Joseph Birtwell, plaintiff, recover of the said Leverett Saltonstall, defendant, the sum of $2433.40 damages and $156.50 costs."

*Mr. Attorney General* and *Mr. Assistant Attorney General Whitney* for plaintiffs in error.

*Mr. J. P. Tucker* and *Mr. Edward Hartley* for defendant in error.

*Mr. Henry E. Tremain* and *Mr. Mason W. Tyler*, by leave of court, filed a brief in behalf of interested parties.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

This was a suit brought by Birtwell, an importer, against the collector of customs at Boston, to recover certain duties alleged to have been overcharged upon goods imported in 1888.

It is conceded, on the part of the government, that the classification and rate of duty adopted by the collector, and affirmed on appeal by the Secretary of the Treasury, were erroneous, and that the classification contended for by the importer was proper. The plaintiff was accordingly entitled to recover if payment of the duties was made by the importer for the purpose of obtaining possession of his mer-

chandise, and if the protest, which must be made in order to give an importer a right of action against a collector for duties claimed to have been illegally exacted, was made in time, as provided by law.

It was affirmatively found, in the Circuit Court, that the duties were paid by the importer in order to get possession of the goods, and no objection has been urged in this court to the correctness of that finding. The question principally discussed is, whether the plaintiff gave timely and sufficient notice of protest and dissatisfaction with the decision of the collector. The record discloses that when the gross estimates were made, as provided in section 2869 of the Revised Statutes, the importer paid the amounts thereof, and that subsequently, when the duties on the respective invoices were liquidated, protests in writing in the form required were filed.

The United States claim that the protests, to be efficacious, should have been made at or before the time the payments were made according to the gross estimates. This position was overruled by the trial court, 63 Fed. Rep. 1004, and the same view prevailed in the Circuit Court of Appeals. 33 U. S. App. 52.

It is unnecessary, at this time, to enter into a minute examination of the several enactments on this subject, as they have been so frequently and recently discussed in several opinions of this court cited in the arguments of counsel. *Barney* v. *Watson*, 92 U. S. 449; *United States* v. *Schlesinger*, 120 U. S. 109; *Davies* v. *Miller*, 130 U. S. 284, and *Barney* v. *Rickard*, 157 U. S. 352, may be particularly mentioned. Our present task is to apply the conclusions of those cases to the one in hand, and we can add but little to the opinion of the Circuit Court of Appeals.

Without repeating the history of the prior statutes, it is sufficient, for the determination of this case, to advert to the phraseology of sections 2931 and 3011 of the Revised Statutes and of the act of February 27, 1877, c. 69, 19 Stat. 240, 247, respectively as follows:

"SEC. 2931. On the entry of any vessel, or of any merchan-

dise, the decision of the collector of customs at the port of importation and entry, as to the rate and amount of duties to be paid on the tonnage of such vessel or on such merchandise, and the dutiable costs and charges thereon, shall be final and conclusive against all persons interested therein, unless the owner, master, commander or consignee of such vessel, in the case of duties levied on tonnage, or the owner, importer, consignee or agent of the merchandise, in the case of duties levied on merchandise, or the costs and charges thereon, shall, within ten days after the ascertainment and liquidation of the duties by the proper officers of the customs, as well as in cases of merchandise entered in bond as for consumption, give notice in writing to the collector on each entry, if dissatisfied with his decision, setting forth therein, distinctly and specifically, the grounds of his objection thereto, and shall, within thirty days after the date of such ascertainment and liquidation, appeal therefrom to the Secretary of the Treasury. The decision of the Secretary on such appeal shall be final and conclusive, and such vessel, or merchandise, or costs and charges, shall be liable to duty accordingly, unless suit shall be brought within ninety days after the decision of the Secretary of the Treasury on such appeal for any duties which shall have been paid before the date of such decision on such vessel, or on such merchandise or costs or charges, or within ninety days after the payment of duties paid after the decision of the Secretary. No suit shall be maintained in any court for the recovery of any duties alleged to have been erroneously or illegally exacted, until the decision of the Secretary of the Treasury shall have been first had on such appeal, unless the decision of the Secretary shall be delayed more than ninety days from the date of such appeal in case of an entry at any port east of the Rocky Mountains, or more than five months in case of an entry west of those mountains."

" SEC. 3011. Any person who shall have made payment under protest, and in order to obtain possession of merchandise imported for him, to any collector or person acting as collector, of any money as duties when such amount of duties was not, or was not wholly, authorized by law, may maintain

an action in the nature of an action at law, which shall be triable by jury, to ascertain the validity of such demand and payment of duties, and to recover back any excess so paid. But no recovery shall be allowed in such action unless a protest in writing and signed by the claimant or his agent was made and delivered at or before the payment, setting forth distinctly and specifically the grounds of objection to the amount claimed."

Section 3011 was, by the act of February 27, 1877, amended as follows:

"Section three thousand and eleven is amended by striking out all after the word 'protest,' in the eighth line, and by adding the words 'and appeal shall have been taken as prescribed in section twenty-nine hundred and thirty-one.'"

Section 3011, as so amended, therefore reads as follows:

"Any person who shall have made payment under protest, and in order to obtain possession of merchandise imported for him, to any collector or person acting as collector, of any money as duties when such amount of duties was not, or was not wholly, authorized by law, may maintain an action in the nature of an action at law, which shall be triable by jury, to ascertain the validity of such demand and payment of duties, and to recover back any excess so paid. But no recovery shall be allowed in such action unless a protest and appeal shall have been taken as prescribed in section twenty-nine hundred and thirty-one."

Undeniably, the general purpose of this legislation was to secure to the importer, who, in order to get possession of his merchandise, has paid duties which he alleges to have been in excess of those authorized by law, a remedy in the nature of an action at law to recover back any such excess, and to the United States a notice in writing, setting forth distinctly and specifically the grounds of objection to the amount claimed; and to provide, in respect to time, that such notice must be given within ten days after the ascertainment and liquidation of the duties and that the action must be brought within ninety days after the decision on appeal by the Secretary of the Treasury.

There is no apparent reason, in the way of advantage or disadvantage to the United States, why the notice or protest should be made at any particular juncture, if made before the appeal to the Secretary.

The moneys paid by the importer, in order that he may get possession of his merchandise, are forthwith paid into the Treasury of the United States, and the function of the protest to warn the government of the fact of dissatisfaction and to commit the importer to a specific statement of the grounds of his objection is equally performed, whether made at the time of such payment or within ten days after the ascertainment and liquidation of the duties.

In *Davies* v. *Miller*, 130 U. S. 284, the contention on the part of the government was that the notice of dissatisfaction with the decision of the collector of customs, required by the act of June 30, 1864, to be given "within ten days after the ascertainment and liquidation of the duties," could not be efficiently given before the final ascertainment and liquidation of the duties as stamped upon the entry. But this court held that the notice might be validly given at any time after the entry of the goods and the collector's original estimate of the amount of the duties, saying:

"The purpose is as well accomplished by giving the notice as soon as the goods have been entered and the duties estimated by the collector as by postponing the giving of the notice until after the final ascertainment and liquidation of the duties have been made and stamped upon the entry. The clause requiring the importer to give such notice ' within ten days after the ascertainment and liquidation of the duties ' must, therefore, according to the fair and reasonable interpretation of the words as applied to the subject-matter, be held to fix only the *terminus ad quem*, the limit beyond which the notice shall not be given, and not to fix the final ascertainment and liquidation of the duties as the *terminus a quo*, or the first point of time at which the notice may be given."

We think that the fair and reasonable import of section 2931 and of section 3011, as they stood in 1888, when these goods were imported, was that a right of action accrued to

the importer if he paid the duties complained of in order to get possession of his merchandise, and if he made his protest in the form required, within ten days after the ascertainment and liquidation of the duties.

That Congress, in 1877, amended section 3011, by striking out the provision that the protest should be made and delivered at or before payment, was a legislative declaration that thereafter such provision should not exist or apply.

It is urged that the phrase " under protest," in the first part of section 3011, is inconsistent with this view. But it is not unusual, in a succession of statutes on the same subject-matter, amending or modifying previous provisions, that a word or phrase may remain, although rendered useless or meaningless by the amendments. Such words are merely vestigial, and should not be permitted to impair or defeat the fair meaning of the enactment.

However, we do not think that, in this instance, there is any real inconsistency. The transaction treated of in this legislation is an entire one, beginning with the entry of the merchandise, and continuing through the appraisement, the liquidation of the duties, the payment, the protest, the appeal, to the trial of the action, and may properly be spoken of as one in which the payment is made under protest, or made in a process in which a protest is made. "Payment under protest" means a transaction where protest has been made in accordance with the requirement of section 2931, and not "at or before payment" of the estimated duties.

This view of the subject renders it unnecessary to consider what effect ought to be given, in the case before us, to the practice of the Treasury, either by way of departmental construction or by way of estoppel. Nor do we consider it incumbent on us to consider whether there was error in the Circuit Court, as a matter of practice, in directing judgment upon the special findings in favor of the importer. No such error was assigned in the Circuit Court, or was considered in the Court of Appeals, but it first appeared in the application for the writ of *certiorari*.

The judgment of the Circuit Court of Appeals, affirming the judgment of the Circuit Court, is

*Affirmed.*

Mr. Chief Justice Fuller, with whom concurred Mr. Justice Field, Mr. Justice Harlan and Mr. Justice Brewer, dissenting.

At common law money unlawfully exacted by a collector of taxes or duties could be recovered back in an action of assumpsit brought against him, but to sustain the action the money must have been paid under duress. Duties are voluntarily paid if paid without objection. The finding in this case that the importer paid for the purpose of obtaining these pieces of iron is no more than would be true in any case, and does not show, in the absence of expressed objection, that the payment of the particular amount was made by the importer *in invitum.*

As construed by this court in *Cary* v. *Curtis,* 3 How. 236, the act of March 3, 1839, c. 82, § 2, 5 Stat. 339, 348, took away the common law right of action to recover moneys paid under duress of goods; but it was restored by the act of February 26, 1845, 5 Stat. 727, the provisions of which were carried forward as § 3011 of the Revised Statutes. The common law action continued as before save that it was subject to certain new restrictions. In the revision of 1873–4, act of February 27, 1877, c. 69, 19 Stat. 240, 247, § 3011 read as follows: "Any person who shall have made payment under protest, and in order to obtain possession of merchandise imported for him, to any collector or person acting as collector, of any money as duties when such amount of duties was not, or was not wholly, authorized by law, may maintain an action in the nature of an action at law, which shall be triable by jury, to ascertain the validity of such demand and payment of duties, and to recover back any excess so paid. But no recovery shall be allowed in such action unless a protest in writing and signed by the claimant or his agent was made and delivered at or before the payment, setting forth distinctly and specifically the grounds of objection to the amount claimed."

Protest was required to show that the legality of the demand was not conceded when payment was made, and the words "at or before payment" were merely declaratory and redundant.

June 30, 1864, 13 Stat. 214, c. 171, an act was passed, the fourteenth section of which was carried forward as section 2931 of the Revised Statutes, as follows:

"§ 2931. On the entry of any vessel, or of any merchandise, the decision of the collector of customs at the port of importation and entry, as to the rate and amount of duties to be paid on the tonnage of such vessel or on such merchandise, and the dutiable costs and charges thereon, shall be final and conclusive against all persons interested therein, unless the owner, master, commander, or consignee of such vessel, in the case of duties levied on tonnage, or the owner, importer, consignee, or agent of the merchandise, in the case of duties levied on merchandise, or the costs and charges thereon, shall, within ten days after the ascertainment and liquidation of the duties by the proper officers of the customs, as well in cases of merchandise entered in bond as for consumption, give notice in writing to the collector on each entry, if dissatisfied with his decision, setting forth therein, distinctly and specifically, the grounds of his objection thereto, and shall within thirty days after the date of such ascertainment and liquidation, appeal therefrom to the Secretary of the Treasury. The decision of the Secretary on such appeal shall be final and conclusive; and such vessel, or merchandise, or costs and charges, shall be liable to duty accordingly, unless suit shall be brought within ninety days after the decision of the Secretary of the Treasury on such appeal for any duties which shall have been paid before the date of such decision on such vessel, or on such merchandise, or costs or charges, or within ninety days after the payment of duties paid after the decision of the Secretary. No suit shall be maintained in any court for the recovery of any duties alleged to have been erroneously or illegally exacted, until the decision of the Secretary of the Treasury shall have been first had on such appeal, unless the decision of the Secretary shall be delayed more than ninety

days from the date of such appeal in case of an entry at any port east of the Rocky Mountains, or more than five months in case of an entry west of those mountains."

This act of 1864 added a new restriction, namely, that an action should not lie until a certain proceeding had been prosecuted in the Treasury Department. It did not abolish the common law action but established the rule of the finality of the collector's decision unless appealed from in a certain way. Many reasons existed for this statute, as in addition to the former, such as the doing away with prospective protests and the securing, when the goods were warehoused, of early notification to the government of objections to the duties, if any, instead of being delayed until protest made on payment when the goods were withdrawn; but it is enough that this court has already ruled that sections 2931 and 3011 coexist and must be construed together. *United States* v. *Schlesinger*, 120 U. S. 109, 114. The language of Judge Lowell in *Schlesinger's case* on circuit (13 Fed. Rep. 682, 684) is apposite:

"It is safe to say, I think, that no case has been decided in which, under objection, a plaintiff has ever recovered of a collector, or of any one else, a payment which was not in the legal sense coerced. It is not mentioned in every case because it is one of those familiar facts which are taken for granted. Does the act of 1864, now Rev. Stat. § 2931, change all this? I think not. That act is not an enabling but a limiting and restricting act. It does not purport to tell us when an action may be maintained, but only that the decision of the department shall be final unless certain things be done."

It may be observed that two written protests or notices of specific objections were not generally, if ever, necessary, for the notice required by § 2931 might be given at the time of paying the money

The Revised Statutes did not change the action recognized by the act of 1845, substantially, or relax any of its requirements, and although it is true, as said in *Arnson* v. *Murphy*, 109 U. S. 238, that the specified action was regulated by express statutory provisions, yet the conditions that the pay-

ment must be made under protest and to obtain the goods still remained, and so it has been several times decided. *Porter* v. *Beard*, 124 U. S. 429 ; *United States* v. *Schlesinger*, 120 U. S. 109.

The question really is, then, whether the restrictions were relaxed by the act of February 27, 1877, 19 Stat. 240. That act is entitled " An act to perfect the revision of the statutes of the United States, and of the statutes relating to the District of Columbia," and declares " that for the purpose of correcting errors and supplying omissions in the act entitled ' An act to revise and consolidate the statutes of the United States in force on the first day of December, Anno Domini, one thousand eight hundred and seventy-three,' so as to make the same truly express such laws, the following amendments are hereby made therein. . . . Section three thousand and eleven is amended by striking out all after the word ' protest' in the eighth line, and by adding the words ' and appeal shall have been taken as prescribed in section twenty-nine hundred and thirty-one.' " This made section 3011 read as follows : " Any person who shall have made payment under protest and in order to obtain possession of merchandise imported for him, to any collector, or person acting as collector, of any money as duties, when such amount of duties was not, or was not wholly, authorized by law, may maintain an action in the nature of an action at law, which shall be triable by jury, to ascertain the validity of such demand and payment of duties, and to recover back any excess so paid. But no recovery shall be allowed in such action unless a protest and appeal shall have been taken as prescribed in section twenty-nine hundred and thirty-one."

This amendment was held by the Circuit Court of Appeals to have revolutionized the law as to the recovery back of moneys voluntarily paid, and to allow payments made without objection to be recovered if grounds of objection were afterwards discovered. And yet the statute, as amended, preserved the express requirement that payments to be recovered back must be made " under protest and in order to obtain possession " of the goods. In other words, the amendment pre-

served so much of the act of 1845 as announced the common law rule and omitted so much as established new restrictions, referring instead to the restrictions of 1864. If the intention had been to change the common law rule the words "under protest" would have been stricken out, and it seems to me a most dangerous and wholly inadmissible rule of construction to treat them as accidentally retained traces of something that had ceased to be. The words "at or before the payment" were omitted, but, as already said, these were merely declaratory and redundant, and that was undoubtedly the reason of the omission. The last clause of section 3011 as amended refers to the notice in writing required by section 2931, and is simply a cross reference to the additional requirement that the Treasury proceeding shall be had before the action is commenced. In my opinion the action remained an action in the nature of a common law action, and governed by the principles of the common law, except as otherwise specifically provided. Indeed section 3011 as it now stands is unambiguous on its face, and does not call for construction unless in respect of the character of the protest; and that need not be considered, as the finding of facts must be taken to mean that no protest at all was made at the time these duties were paid and the pieces of iron obtained by the importer. I cannot accept the conclusion that under this act the importer can recover on a payment not made under duress, and think that such duress cannot be said to exist in the absence of any objection to making the payment.

I, therefore, dissent from the opinion and judgment of the court, and am authorized to say that MR. JUSTICE FIELD, MR. JUSTICE HARLAN and MR. JUSTICE BREWER concur in this dissent.