164 U.S. 54 (1896)
SALTONSTALL
v.
BIRTWELL.
No. 257.
Supreme Court of United States.
Argued April 24, 27, 1896.
Decided October 26, 1896.
CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.
*65 Mr. Attorney General and Mr. Assistant Attorney General Whitney for plaintiffs in error.
Mr. J.P. Tucker and Mr. Edward Hartley for defendant in error.
Mr. Henry E. Tremain and Mr. Mason W. Tyler, by leave of court, filed a brief in behalf of interested parties.
MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.
This was a suit brought by Birtwell, an importer, against the collector of customs at Boston, to recover certain duties alleged to have been overcharged upon goods imported in 1888.
It is conceded, on the part of the government, that the classification and rate of duty adopted by the collector, and affirmed on appeal by the Secretary of the Treasury, were erroneous, and that the classification contended for by the importer was proper. The plaintiff was accordingly entitled to recover if payment of the duties was made by the importer for the purpose of obtaining possession of his merchandise, *66 and if the protest, which must be made in order to give an importer a right of action against a collector for duties claimed to have been illegally exacted, was made in time, as provided by law.
It was affirmatively found, in the Circuit Court, that the duties were paid by the importer in order to get possession of the goods, and no objection has been urged in this court to the correctness of that finding. The question principally discussed is, whether the plaintiff gave timely and sufficient notice of protest and dissatisfaction with the decision of the collector. The record discloses that when the gross estimates were made, as provided in section 2869 of the Revised Statutes, the importer paid the amounts thereof, and that subsequently, when the duties on the respective invoices were liquidated, protests in writing in the form required were filed.
The United States claim that the protests, to be efficacious, should have been made at or before the time the payments were made according to the gross estimates. This position was overruled by the trial court, 63 Fed. Rep. 1004, and the same view prevailed in the Circuit Court of Appeals. 33 U.S. App. 52.
It is unnecessary, at this time, to enter into a minute examination of the several enactments on this subject, as they have been so frequently and recently discussed in several opinions of this court cited in the arguments of counsel. Barney v. Watson, 92 U.S. 449; United States v. Schlesinger, 120 U.S. 109; Davies v. Miller, 130 U.S. 284, and Barney v. Rickard, 157 U.S. 352, may be particularly mentioned. Our present task is to apply the conclusions of those cases to the one in hand, and we can add but little to the opinion of the Circuit Court of Appeals.
Without repeating the history of the prior statutes, it is sufficient, for the determination of this case, to advert to the phraseology of sections 2931 and 3011 of the Revised Statutes and of the act of February 27, 1877, c. 69, 19 Stat. 240, 247, respectively as follows:
"SEC. 2931. On the entry of any vessel, or of any merchandise, *67 the decision of the collector of customs at the port of importation and entry, as to the rate and amount of duties to be paid on the tonnage of such vessel or on such merchandise, and the dutiable costs and charges thereon, shall be final and conclusive against all persons interested therein, unless the owner, master, commander or consignee of such vessel, in the case of duties levied on tonnage, or the owner, importer, consignee or agent of the merchandise, in the case of duties levied on merchandise, or the costs and charges thereon, shall, within ten days after the ascertainment and liquidation of the duties by the proper officers of the customs, as well as in cases of merchandise entered in bond as for consumption, give notice in writing to the collector on each entry, if dissatisfied with his decision, setting forth therein, distinctly and specifically, the grounds of his objection thereto, and shall, within thirty days after the date of such ascertainment and liquidation, appeal therefrom to the Secretary of the Treasury. The decision of the Secretary on such appeal shall be final and conclusive, and such vessel, or merchandise, or costs and charges, shall be liable to duty accordingly, unless suit shall be brought within ninety days after the decision of the Secretary of the Treasury on such appeal for any duties which shall have been paid before the date of such decision on such vessel, or on such merchandise or costs or charges, or within ninety days after the payment of duties paid after the decision of the Secretary. No suit shall be maintained in any court for the recovery of any duties alleged to have been erroneously or illegally exacted, until the decision of the Secretary of the Treasury shall have been first had on such appeal, unless the decision of the Secretary shall be delayed more than ninety days from the date of such appeal in case of an entry at any port east of the Rocky Mountains, or more than five months in case of an entry west of those mountains."
"SEC. 3011. Any person who shall have made payment under protest, and in order to obtain possession of merchandise imported for him, to any collector or person acting as collector, of any money as duties when such amount of duties was not, or was not wholly, authorized by law, may maintain *68 an action in the nature of an action at law, which shall be triable by jury, to ascertain the validity of such demand and payment of duties, and to recover back any excess so paid. But no recovery shall be allowed in such action unless a protest in writing and signed by the claimant or his agent was made and delivered at or before the payment, setting forth distinctly and specifically the grounds of objection to the amount claimed."
Section 3011 was, by the act of February 27, 1877, amended as follows:
"Section three thousand and eleven is amended by striking out all after the word `protest,' in the eighth line, and by adding the words `and appeal shall have been taken as prescribed in section twenty-nine hundred and thirty-one.'"
Section 3011, as so amended, therefore reads as follows:
"Any person who shall have made payment under protest, and in order to obtain possession of merchandise imported for him, to any collector or person acting as collector, of any money as duties when such amount of duties was not, or was not wholly, authorized by law, may maintain an action in the nature of an action at law, which shall be triable by jury, to ascertain the validity of such demand and payment of duties, and to recover back any excess so paid. But no recovery shall be allowed in such action unless a protest and appeal shall have been taken as prescribed in section twenty-nine hundred and thirty-one."
Undeniably, the general purpose of this legislation was to secure to the importer, who, in order to get possession of his merchandise, has paid duties which he alleges to have been in excess of those authorized by law, a remedy in the nature of an action at law to recover back any such excess, and to the United States a notice in writing, setting forth distinctly and specifically the grounds of objection to the amount claimed; and to provide, in respect to time, that such notice must be given within ten days after the ascertainment and liquidation of the duties and that the action must be brought within ninety days after the decision on appeal by the Secretary of the Treasury.
*69 There is no apparent reason, in the way of advantage or disadvantage to the United States, why the notice or protest should be made at any particular juncture, if made before the appeal to the Secretary.
The moneys paid by the importer, in order that he may get possession of his merchandise, are forthwith paid into the Treasury of the United States, and the function of the protest to warn the government of the fact of dissatisfaction and to commit the importer to a specific statement of the grounds of his objection is equally performed, whether made at the time of such payment or within ten days after the ascertainment and liquidation of the duties.
In Davies v. Miller, 130 U.S. 284, the contention on the part of the government was that the notice of dissatisfaction with the decision of the collector of customs, required by the act of June 30, 1864, to be given "within ten days after the ascertainment and liquidation of the duties," could not be efficiently given before the final ascertainment and liquidation of the duties as stamped upon the entry. But this court held that the notice might be validly given at any time after the entry of the goods and the collector's original estimate of the amount of the duties, saying:
"The purpose is as well accomplished by giving the notice as soon as the goods have been entered and the duties estimated by the collector as by postponing the giving of the notice until after the final ascertainment and liquidation of the duties have been made and stamped upon the entry. The clause requiring the importer to give such notice `within ten days after the ascertainment and liquidation of the duties' must, therefore, according to the fair and reasonable interpretation of the words as applied to the subject-matter, be held to fix only the terminus ad quem, the limit beyond which the notice shall not be given, and not to fix the final ascertainment and liquidation of the duties as the terminus a quo, or the first point of time at which the notice may be given."
We think that the fair and reasonable import of section 2931 and of section 3011, as they stood in 1888, when these goods were imported, was that a right of action accrued to *70 the importer if he paid the duties complained of in order to get possession of his merchandise, and if he made his protest in the form required, within ten days after the ascertainment and liquidation of the duties.
That Congress, in 1877, amended section 3011, by striking out the provision that the protest should be made and delivered at or before payment, was a legislative declaration that thereafter such provision should not exist or apply.
It is urged that the phrase "under protest," in the first part of section 3011, is inconsistent with this view. But it is not unusual, in a succession of statutes on the same subject-matter, amending or modifying previous provisions, that a word or phrase may remain, although rendered useless or meaningless by the amendments. Such words are merely vestigial, and should not be permitted to impair or defeat the fair meaning of the enactment.
However, we do not think that, in this instance, there is any real inconsistency. The transaction treated of in this legislation is an entire one, beginning with the entry of the merchandise, and continuing through the appraisement, the liquidation of the duties, the payment, the protest, the appeal, to the trial of the action, and may properly be spoken of as one in which the payment is made under protest, or made in a process in which a protest is made. "Payment under protest" means a transaction where protest has been made in accordance with the requirement of section 2931, and not "at or before payment" of the estimated duties.
This view of the subject renders it unnecessary to consider what effect ought to be given, in the case before us, to the practice of the Treasury, either by way of departmental construction or by way of estoppel. Nor do we consider it incumbent on us to consider whether there was error in the Circuit Court, as a matter of practice, in directing judgment upon the special findings in favor of the importer. No such error was assigned in the Circuit Court, or was considered in the Court of Appeals, but it first appeared in the application for the writ of certiorari.
*71 The judgment of the Circuit Court of Appeals, affirming the judgment of the Circuit Court, is
Affirmed.
MR. CHIEF JUSTICE FULLER, with whom concurred MR. JUSTICE FIELD, MR. JUSTICE HARLAN and MR. JUSTICE BREWER, dissenting.
At common law money unlawfully exacted by a collector of taxes or duties could be recovered back in an action of assumpsit brought against him, but to sustain the action the money must have been paid under duress. Duties are voluntarily paid if paid without objection. The finding in this case that the importer paid for the purpose of obtaining these pieces of iron is no more than would be true in any case, and does not show, in the absence of expressed objection, that the payment of the particular amount was made by the importer in invitum.
As construed by this court in Cary v. Curtis, 3 How. 236, the act of March 3, 1839, c. 82, § 2, 5 Stat. 339, 348, took away the common law right of action to recover moneys paid under duress of goods; but it was restored by the act of February 26, 1845, 5 Stat. 727, the provisions of which were carried forward as § 3011 of the Revised Statutes. The common law action continued as before save that it was subject to certain new restrictions. In the revision of 1873-4, act of February 27, 1877, c. 69, 19 Stat. 240, 247, § 3011 read as follows: "Any person who shall have made payment under protest, and in order to obtain possession of merchandise imported for him, to any collector or person acting as collector, of any money as duties when such amount of duties was not, or was not wholly, authorized by law, may maintain an action in the nature of an action at law, which shall be triable by jury, to ascertain the validity of such demand and payment of duties, and to recover back any excess so paid. But no recovery shall be allowed in such action unless a protest in writing and signed by the claimant or his agent was made and delivered at or before the payment, setting forth distinctly and specifically the grounds of objection to the amount claimed."
*72 Protest was required to show that the legality of the demand was not conceded when payment was made, and the words "at or before payment" were merely declaratory and redundant.
June 30, 1864, 13 Stat. 214, c. 171, an act was passed, the fourteenth section of which was carried forward as section 2931 of the Revised Statutes, as follows:
"§ 2931. On the entry of any vessel, or of any merchandise, the decision of the collector of customs at the port of importation and entry, as to the rate and amount of duties to be paid on the tonnage of such vessel or on such merchandise, and the dutiable costs and charges thereon, shall be final and conclusive against all persons interested therein, unless the owner, master, commander, or consignee of such vessel, in the case of duties levied on tonnage, or the owner, importer, consignee, or agent of the merchandise, in the case of duties levied on merchandise, or the costs and charges thereon, shall, within ten days after the ascertainment and liquidation of the duties by the proper officers of the customs, as well in cases of merchandise entered in bond as for consumption, give notice in writing to the collector on each entry, if dissatisfied with his decision, setting forth therein, distinctly and specifically, the grounds of his objection thereto, and shall within thirty days after the date of such ascertainment and liquidation, appeal therefrom to the Secretary of the Treasury. The decision of the Secretary on such appeal shall be final and conclusive; and such vessel, or merchandise, or costs and charges, shall be liable to duty accordingly, unless suit shall be brought within ninety days after the decision of the Secretary of the Treasury on such appeal for any duties which shall have been paid before the date of such decision on such vessel, or on such merchandise, or costs or charges, or within ninety days after the payment of duties paid after the decision of the Secretary. No suit shall be maintained in any court for the recovery of any duties alleged to have been erroneously or illegally exacted, until the decision of the Secretary of the Treasury shall have been first had on such appeal, unless the decision of the Secretary shall be delayed more than ninety *73 days from the date of such appeal in case of an entry at any port east of the Rocky Mountains, or more than five months in case of an entry west of those mountains."
This act of 1864 added a new restriction, namely, that an action should not lie until a certain proceeding had been prosecuted in the Treasury Department. It did not abolish the common law action but established the rule of the finality of the collector's decision unless appealed from in a certain way. Many reasons existed for this statute, as in addition to the former, such as the doing away with prospective protests and the securing, when the goods were warehoused, of early notification to the government of objections to the duties, if any, instead of being delayed until protest made on payment when the goods were withdrawn; but it is enough that this court has already ruled that sections 2931 and 3011 coexist and must be construed together. United States v. Schlesinger, 120 U.S. 109, 114. The language of Judge Lowell in Schlesinger's case on circuit (13 Fed. Rep. 682, 684) is apposite:
"It is safe to say, I think, that no case has been decided in which, under objection, a plaintiff has ever recovered of a collector, or of any one else, a payment which was not in the legal sense coerced. It is not mentioned in every case because it is one of those familiar facts which are taken for granted. Does the act of 1864, now Rev. Stat. § 2931, change all this? I think not. That act is not an enabling but a limiting and restricting act. It does not purport to tell us when an action may be maintained, but only that the decision of the department shall be final unless certain things be done."
It may be observed that two written protests or notices of specific objections were not generally, if ever, necessary, for the notice required by § 2931 might be given at the time of paying the money.
The Revised Statutes did not change the action recognized by the act of 1845, substantially, or relax any of its requirements, and although it is true, as said in Arnson v. Murphy, 109 U.S. 238, that the specified action was regulated by express statutory provisions, yet the conditions that the payment *74 must be made under protest and to obtain the goods still remained, and so it has been several times decided. Porter v. Beard, 124 U.S. 429; United States v. Schlesinger, 120 U.S. 109.
The question really is, then, whether the restrictions were relaxed by the act of February 27, 1877, 19 Stat. 240. That act is entitled "An act to perfect the revision of the statutes of the United States, and of the statutes relating to the District of Columbia," and declares "that for the purpose of correcting errors and supplying omissions in the act entitled `An act to revise and consolidate the statutes of the United States in force on the first day of December, Anno Domini, one thousand eight hundred and seventy-three,' so as to make the same truly express such laws, the following amendments are hereby made therein.... Section three thousand and eleven is amended by striking out all after the word `protest' in the eighth line, and by adding the words `and appeal shall have been taken as prescribed in section twenty-nine hundred and thirty-one.'" This made section 3011 read as follows: "Any person who shall have made payment under protest and in order to obtain possession of merchandise imported for him, to any collector, or person acting as collector, of any money as duties, when such amount of duties was not, or was not wholly, authorized by law, may maintain an action in the nature of an action at law, which shall be triable by jury, to ascertain the validity of such demand and payment of duties, and to recover back any excess so paid. But no recovery shall be allowed in such action unless a protest and appeal shall have been taken as prescribed in section twenty-nine hundred and thirty-one."
This amendment was held by the Circuit Court of Appeals to have revolutionized the law as to the recovery back of moneys voluntarily paid, and to allow payments made without objection to be recovered if grounds of objection were afterwards discovered. And yet the statute, as amended, preserved the express requirement that payments to be recovered back must be made "under protest and in order to obtain possession" of the goods. In other words, the amendment preserved *75 so much of the act of 1845 as announced the common law rule and omitted so much as established new restrictions, referring instead to the restrictions of 1864. If the intention had been to change the common law rule the words "under protest" would have been stricken out, and it seems to me a most dangerous and wholly inadmissible rule of construction to treat them as accidentally retained traces of something that had ceased to be. The words "at or before the payment" were omitted, but, as already said, these were merely declaratory and redundant, and that was undoubtedly the reason of the omission. The last clause of section 3011 as amended refers to the notice in writing required by section 2931, and is simply a cross reference to the additional requirement that the Treasury proceeding shall be had before the action is commenced. In my opinion the action remained an action in the nature of a common law action, and governed by the principles of the common law, except as otherwise specifically provided. Indeed section 3011 as it now stands is unambiguous on its face, and does not call for construction unless in respect of the character of the protest; and that need not be considered, as the finding of facts must be taken to mean that no protest at all was made at the time these duties were paid and the pieces of iron obtained by the importer. I cannot accept the conclusion that under this act the importer can recover on a payment not made under duress, and think that such duress cannot be said to exist in the absence of any objection to making the payment.
I, therefore, dissent from the opinion and judgment of the court, and am authorized to say that MR. JUSTICE FIELD, MR. JUSTICE HARLAN and MR. JUSTICE BREWER concur in this dissent.