**DISTRICT OF COLUMBIA v. McFALL.**

**No. 10703.**

United States Court of Appeals
District of Columbia Circuit.

Submitted Dec. 5, 1950.

Decided Feb. 23, 1951.

George C. Updegraff, Asst. Corp. Counsel, D. C., Washington, D. C., with whom Vernon E. West, Corp. Counsel, D. C., and Chester H. Gray, Principal Asst. Corp. Counsel, D. C., Washington, D. C., submitted on the brief, for petitioner.

No appearance for respondent.

Before CLARK, PRETTYMAN and PROCTOR, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals for the District of Columbia. A District of Columbia statute imposes an excise tax upon the issuance of original certificates of title for motor vehicles.[1] The tax is measured by the fair market value of the vehicle as determined by the Assessor. The statute provides[2] that a person aggrieved by an assessment may, within ninety days from the date the applicant is notified of the amount of the tax, appeal to the Board of Tax Appeals "in the same manner and to the same extent" as provided for certain other taxes. The pertinent section thus referred to [3] provides that any person aggrieved by an assessment may appeal, "provided such person shall first pay such tax, together with penalties and interest due thereon, to the collector of taxes of the District of Columbia under protest in writing."

1. Pub.L.No. 76, 81st Cong., 1st Sess., § 301, May 27, 1949, 63 Stat. 128.

2. Pub.L.No. 76, 81st Cong., 1st Sess., § 303, May 27, 1949, 63 Stat. 129.

3. 52 Stat. 371 (1938), as amended, D.C. Code, § 47-2403 (1940).

McFall filed an application for a title certificate for his automobile and was advised by the Assessor that the tax would be $54.90. On February 9, 1950, he paid the tax. On February 13, 1950, he appealed to the Board of Tax Appeals. On February 17, 1950, he addressed a letter to the Collector of Taxes, in which he protested the tax. On February 21, 1950, the Collector of Taxes received that letter.

The principal question presented here is whether the appeal to the Board of Tax Appeals would lie despite the fact that the protest was filed after instead of before the appeal was filed.

Protest as a feature of tax litigation has a long and changing history. We shall not enter upon an extended discussion of it, but the general principles can be stated briefly. Absent statutory provision, a tax paid voluntarily cannot be recovered.[4] Moreover, absent statute a mere protest does not establish involuntariness.[5] So a person relying upon a statutory provision permitting action to recover if protest is made must bring himself within the statutory provision.[6] Aside from its bearing upon the question of involuntary payment, the protest has two purposes, to serve notice upon the Government of the discontent of the taxpayer and to define the grounds upon which the taxpayer stands.

In the early days protest was required as a prerequisite to recovery of federal duties but not of federal internal revenue taxes. Thereafter it was required in respect of the latter. Finally, in 1924,[7] the requirement of protest in respect to internal revenue taxes was eliminated. In its place a claim for refund has been established as the prerequisite to recovery. All of these changes in requirements have been effectuated by statute.

Prior to 1877 the statutory provision in respect to duties was that no recovery could be allowed unless a protest in writing was made and delivered "at or before the payment".[8] In that year Congress amended the statute[9] so that it began with the expression "Any person who shall have made payment under protest", etc., and concluded "But no recovery shall be allowed in such action unless a protest and appeal shall have been taken as prescribed in section twenty-nine hundred and thirty-one [of the Revised Statutes]." The latter section provided for a protest within ten days after the ascertainment and liquidation of the duties. The United States claimed that protests under the new statute must be made at or before the time the payments were made, basing its position upon the opening language of the statute as amended. But the Supreme Court held[10] that the expression "who shall have made payment under protest" in the opening phrase referred to the protest described in the last sentence of the statute, that is, the protest prescribed in Section 2931. It was upon that basis that the Court held that a requirement for payment under protest was met by protest within ten days. In the present case the Board of Tax Appeals relied upon the conclusion in that case, but we think it did not give sufficient effect to the basis upon which the conclusion rested.

From the discussion in the Saltonstall case[11] and in the other cases and authorities hereinabove noted, it is clear, we think, that statutory prescriptions as to protest must be met.

4. 3 Cooley, Taxation § 1282 (4th ed. 1924), and cases there collected; Wright v. Blakeslee, 1880, 101 U.S. 174, 25 L.Ed. 1048; Fox v. Edwards, 2 Cir., 1923, 287 F. 669, 34 A.L.R. 973; Winant v. Gardner, 2 Cir., 1928, 29 F.2d 836.

5. 3 Cooley, op. cit. supra note 4, § 1297; Chesebrough v. United States, 1904, 192 U.S. 253, 24 S.Ct. 262, 48 L.Ed. 432; Atchison, T. & S. F. R. Co. v. O'Connor, 1912, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436.

6. 3 Cooley, op. cit. supra note 4, § 1298.

7. Sec. 1014 of the 1924 Revenue Act, 43 Stat. 343, Int.Rev.Code, § 3772 (b), 26 U.S.C.A. § 3772(b).

8. Rev.Stat. § 3011.

9. 19 Stat. 247.

10. Saltonstall v. Birtwell, 1896, 164 U.S. 54, 17 S.Ct. 19, 24, 41 L.Ed. 348.

11. Ibid.

In the present case the Board of Tax Appeals was of the view that protest was not required in respect to the excise tax here involved. The statutory provision as to these appeals is that they be taken "in the same manner and to the same extent as set forth in" a section of the statute which requires payment under protest as a prerequisite to appeal. The Board said that "The manner and extent of an appeal are one thing and the compliance with conditions precedent is quite another" and treated the protest as a condition precedent. But it seems to us that the language "to the same extent" must include the requirement of protest. The permissible extent of the appeal is the extent to which the tax has theretofore been paid under protest.

The Board was also of the view that if a protest was required the protest made, after the appeal was filed, was sufficient. The District of Columbia statute, from which we have quoted above, provides for an appeal "provided such person shall first pay such tax * * * under protest in writing." We do not see how it is possible to ignore the requirement that the person shall "first" pay under protest. If the statute had provided merely that the taxpayer might appeal within ninety days after notice of the assessment, provided that he should pay the tax under protest in writing, we might well consider that payment and protest might be one of the elements of the appeal itself and might occur any time within the ninety days, either before or after the actual filing of the appeal. But to reach that result upon the statute before us would require that we read the word "first" out of the statute. It seems clear enough that this statute was written against the background which we have outlined. It was written into District of Columbia law long after it had been written out of the Federal Internal Revenue Code. Although the provision appears to be harsh, we do not see how we can avoid giving it effect.

McFall did not make any protest before he appealed to the Board of Tax Appeals. As of the time when his petition was lodged with that Board, his payment of the tax was voluntary. It follows that the appeal to the Board would not lie.

The decision of the Board of Tax Appeals is

Reversed.