## MUELLER BRASS CO. v. ALEXANDER MILBURN CO.*

### No. 8913.

United States Court of Appeals
District of Columbia.

Argued Oct. 19, 1945.

Decided Dec. 6, 1945.

Mr. Eugene R. West, of Washington, D. C., for appellant.

Mr. Louis M. Denit, of Washington, D. C., with whom Mr. A. Leckie Cox, of Washington, D. C., was on the brief, for appellee. Mr. Thomas S. Jackson, of Washington, D. C., also entered an appearance for appellee.

Before ALBERT LEE STEPHENS, Circuit Judge, sitting by designation, and WILBUR K. MILLER and PRETTYMAN, Associate Justices.

PRETTYMAN, Associate Justice.

Appellee was plaintiff below in a civil action for breach of a contract for the sale and delivery of goods. Process was served upon an agent of appellant, one E. E. Sutter, in the District of Columbia. A motion to quash the service of process was made. The District Court took testimony and denied the motion. This court granted a special appeal. D.C.Code 1940, § 17—101.

Appellant is a corporation organized and doing business under the laws of the State of Michigan, with its principal office in Port Huron, and was the vendor in the contract. ¹Appellee, the purchaser of the goods, is a corporation organized and doing business under the laws of the State of Maryland, with its principal place of business at Baltimore. The contract was for the manufacture and sale of certain rods, tubes, castings, etc. No part of the negotiations preliminary to the contract was carried on within the District of Columbia, and the contract was executed in Baltimore. No part of the contract was to be performed within the District, and none of the products involved were shipped to or used therein.

---

* On appellant's motion to dismiss, filed after the decision of the court was rendered, and it appearing that the parties had settled the case, the judgment of the court was vacated and the appeal dismissed, and the cause remanded to the District Court with directions that it be dismissed as moot. Cf. Stewart v. Southern Railway Co., 315 U.S. 784, 62 S.Ct. 801, 86 L.Ed. 1190.

For approximately three years prior to the institution of this action, appellant was engaged almost 100 per cent in the manufacture and production of war materials for the United States. It had large contracts which were obtained through Government agencies upon bids submitted pursuant to invitations and upon Government specifications. The great bulk of the products sold to the Government or to other contractors for ultimate sale to the Government was delivered to and used at various Army and Navy depots, arsenals and fields scattered throughout the United States, and not within the District of Columbia.

During this period Sutter, upon whom process in this action was served, was appellant's representative in Washington, with the primary duty of maintaining contact with various Government agencies in respect to reports, allocations and directives relating to the company's requirements for materials. He had no authority to, nor did he in fact, make any commitment of any kind as agent of appellant.

Appellant had an office in Washington occupied by Sutter and one stenographer. Its name was carried in the Washington telephone directory, in the city directory and on the door of its office. In a trade catalog it advertised that it maintained Sutter as its Washington representative. It also advertised in "Thomas' Register of American Manufacturers, 34th Edition, 1944" that it had a branch office in Washington. This latter publication stated that no agent, salesman or other representative had any authority to bind the company by any representation, warranty, understanding or agreement in respect to any sales of its products. No stock of goods was maintained or warehoused by the company within the District of Columbia.

In addition to the foregoing facts, the District Court found the following, to which attorneys for the appellee agreed as established by the evidence:

"That a minor portion of the duties of said Sutter consisted in soliciting a few comparatively small orders of manufacturers in the District of Columbia, but said Sutter is merely a contact man and has no authority to and does not, in fact, accept orders or bind the company to any contracts therefor, and that all orders obtained in the District have been and are forwarded to, and accepted only at the home office of the company; that he has no authority to nor did he in fact, warehouse or deliver any material, make any collection of accounts, nor make or supervise any installations or do any service work on any of the company's products therein, and that less than 5% of his time is spent in connection with the sale of company's products for delivery within the District."

The transcript of the testimony supplies no further detail on this phase of the facts.

The pertinent section of the statute (D. C.Code, 1940, § 13—103) provides:

"In actions against foreign corporations doing business in the District all process may be served on the agent of such corporation or person conducting its business * * *."

The question is whether under the facts of the case appellant was "doing business in the District" of Columbia within the meaning of the quoted statute.[1] We think the answer should be in the negative.

The maintenance in Washington of a representative by a manufacturer for the purpose of gathering information from Government departments and agencies and for convenience of communication between the Government and the company in respect to Government work being done throughout the country, is not dissimilar to the maintenance of news-gathering agencies here by out-of-town newspapers. In respect to the latter this court has said:

"As the seat of national government, Washington is the source of much news of national importance, which makes it desirable in the public interest that many newspapers should maintain vigilant correspondents here. If the employment of a Washington correspondent, the announcement of his address, and the payment of his office rent, subjects a nonresident newspaper corporation to legal process in Washington for matter appearing in its paper at home, it would bring in nearly every important newspaper in the nation, and many foreign publishing corporations, which in our opinion the present statute does not do."[2]

[1] Without the statute the question would still be present as a jurisdictional requisite to Constitutional due process. Riverside & D. R. Cotton Mills v. Menefee, 1915, 237 U.S. 189, 35 S.Ct. 579, 59 L.Ed. 910; 29 Col.L.Rev. 187.
[2] Neely v. Philadelphia Inquirer Co., 61 App.D.C. 334, 62 F.2d 873, 875; Layne

█ We think that the same considerations govern this phase of the case at bar. The manifold respects in which the Federal Government touches business concerns, especially during war time, are common knowledge. The conduct of a business at scattered points elsewhere than in the District of Columbia makes desirable, if not necessary, the presence here of an agent employed to maintain contact with the Government agencies in respect to reports, allocations and directives relating to materials for production, as in this case. We do not think that such activities constitute doing busines in the District of Columbia in the jurisdictional sense.

█ In respect of the other activities of the agent Sutter, it is well settled that the mere solicitation of orders does not constitute the doing or transacting of business within the meaning of the statute governing the service of process.[3]

Sutter's activities, outside of his duties as "contact man" with the Government, were mere solicitation. Moreover, the solicitation was "minor" and related to "a few comparatively small orders"; the company was engaged "almost 100 per cent" in the manufacture and production of war materials for the United States Government. The findings of the court below depict this solicitation as an unimportant incident to the agent's presence in Washington. Such solicitation is not the regular, continuous and sustained course of business referred to by this court in Frene v. Louisville Cement Co., 1943, 77 U.S. App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926; and by other courts in similar cases. In the Frene case, upon which appellee relies, the meaning of the term "doing business" in the jurisdictional statute was carefully examined. The agent in that case was employed by the company as its representative in Maryland, Virginia and the District of Columbia for the purpose of soliciting orders; he spent about two-thirds of his time in Washington. He also used his best judgment in promoting satisfactory use of the material, visiting the jobs where the product was being used, making suggestions for solving difficulties which arose in the use of the product, receiving complaints, and aiding generally in preventing and clearing up misunderstandings and difficulties arising in the course of the performance of the contracts. This court held that such solicitation plus the other activities was sufficient to constitute the doing of business. The court pointed out a difference between casual or occasional solicitation and regular, continuous and long-continued solicitation, and commented that, "It would seem, therefore, that the 'mere solicitation' rule should be abandoned when the soliciting activity is a regular, continuous and sustained course of business, as it is in this case." As we have indicated, we are not here faced with that problem.

The maintenance of an office by appellant in the case at bar would appear to be a customary feature of liaison with Government agencies in the respects mentioned, and necessary to the efficient and expeditious conduct of its work throughout the country for the Government. An office would not seem to be justified by the other activities of Sutter as described in the quoted finding of fact. The same comments apply to the telephone and city directory listings in this particular case. In the Thomas' Register, "D.C.: Washington" was included in a list of "Branches" of Mueller Brass Company, appellant; and in its own catalog, under the heading "Sales Branches and Representatives", appellant listed "Washington, D. C., E. E. Sutter, 6705 6th St., N.W."[4] In combination with circumstances different from those here present, these listings might have material significance. But the inclusion of this office among its "branches" and Sutter

---

v. Tribune Co., 63 App.D.C. 213, 71 F. 2d 223, certiorari denied 293 U.S. 572, 55 S.Ct. 83, 79 L.Ed. 670.

[3] Green v. Chicago, Burlington & Quincy R. Co., 1907, 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; Philadelphia & Reading R. Co. v. McKibbin, 1917, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; People's Tobacco Company v. American Tobacco Co., 1918, 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas.1918C, 537; Cancelmo v. Seaboard Airline Railway, 1926, 56 App.D.C. 225, 12 F.2d 166; Whitaker v. Macfadden Publications, 1939, 70 App.D.C. 165, 105 F.2d 44; 18 Fletcher Cyc.Corp., 1933 Perm. Ed., § 8718, and cases there cited.

[4] The court will judicially notice that the address given is not the Shoreham Building, where appellant's office was located.

among its "representatives" is not inconsistent with the nature of Sutter's employment as we have found it.

A basic concept of sufficient precision to yield certain results in all cases of this sort has not yet been formulated.[5] The reported opinions on the subject are multitudinous, the facts are of almost infinite variety, and the rules used by the courts in resolving the disputes differ. We are not required to attempt a definition of fundamentals in the case before us. Whether measured by the "corporate presence" standard,[6] or the "reasonable jurisdiction" standard,[7] or by the relation of the cause of action to the forum,[8] or tested by the doctrine of forum nonconveniens,[9] we think that the activities found as facts by the District Court in this case do not constitute doing business in such sense as to make the appellant amenable to the service of process here.

Reversed.

---

[5] 29 Va.L.Rev. 950; 29 Col.L.Rev. 187.

[6] Philadelphia & Reading R. Co. v. McKibbin, 1917, 243 U.S. 264, 265, 37 S. Ct. 280, 61 L.Ed. 710.

[7] Atchison, T. & S. F. R. Co. v. Weeks, 5 Cir., 1918, 254 F. 513.

[8] Empire Fuel Co. v. Lyons, 6 Cir., 1919, 257 F. 890; Maverick Mills v. Davis, D.C.Mass.1923, 294 F. 404; see Davis v. Farmers' Co-operative Equity Co., 1923, 262 U.S. 312, 316, 43 S.Ct. 556, 67 L.Ed. 996; Frink Co. v. Erikson, 1 Cir., 1927, 20 F.2d 707, 711.

[9] Commonwealth of Massachusetts v. Missouri, 308 U.S. 1, 19, 60 S.Ct. 39, 84 L.Ed. 3; see Blair, The Doctrine of Forum Non Conveniens, 29 Col.L.Rev. 1.