OWENS–ILLINOIS GLASS CO. v. DISTRICT OF COLUMBIA.

DISTRICT OF COLUMBIA v. OWENS–ILLINOIS GLASS CO.

Nos. 11137, 11145.

United States Court of Appeals District of Columbia Circuit.

Argued March 28, 1952.

Decided Jan. 8, 1953.

Petition for Rehearing Denied March 26, 1953.

James C. McKay, Washington, D. C., with whom James E. Carr, Washington, D. C., was on the brief, for Owens-Illinois Glass Co.

Harry L. Walker, Asst. Corp. Counsel for District of Columbia, Washington, D. C., with whom Vernon E. West, Corp. Counsel, Chester H. Gray, Principal Asst. Corp. Counsel, and William S. Cheatham, Asst. Corp. Counsel, Washington, D. C., were on the brief, for District of Columbia.

Before EDGERTON, PRETTYMAN, and WASHINGTON, Circuit Judges.

EDGERTON, Circuit Judge.

These cases are a petition and a cross-petition to review a decision of what was then the Board of Tax Appeals for the District of Columbia, now the District of Columbia Tax Court.

The taxpayer, an Ohio corporation with its principal office in Toledo, makes and sells glass containers and related products. During the tax year 1948 the corporation maintained in the District of Columbia a nine-room office in charge of one of the corporation's officers. He and his staff kept "in contact with all kinds of developments either in the legislative or executive departments of the Federal Government which might affect [the] business in any way at all." He testified, for example, that "We keep the Administrative Division in Toledo informed on the introduction of all bills into Congress and report on the progress of those bills, which in our judgment would have some effect on the operation of our activities. * * * We report on the regulations of the Treasury Department as they affect taxes and affect our business." They also "regularly" received inquiries about sales of the corporation's products in the District, which they referred to the corporation's Baltimore office. Salesmen from its Baltimore and Philadelphia offices solicited sales in the District. The Baltimore salesmen sometimes visited the District office but their visits were usually social, though they sometimes used office telephones for business purposes. The corporation sold and shipped to customers in the District goods to the value of $794,867.12 during the tax year 1948.

■ (1) The District of Columbia Income and Franchise Tax Act of 1947 imposes a 5% tax on the net income from District sources of foreign and domestic corporations "For the privilege of carrying on or engaging in any trade or business within the District and of receiving income from sources within the District * * *." D.C.Code (1951), § 47–1571a, 61 Stat. 345. It defines "trade or business" to "include the engaging in or carrying on of

any trade, business, profession, vocation or calling or commercial activity in the District of Columbia; * * * Provided, however, That the words 'trade or business' shall not include * * * (1) Sales of tangible personal property * * * by a corporation * * * which does not physically have or maintain an office, warehouse, or other place of business in the District, and which has no officer, agent, or representative having an office or other place of business in the District * * * ; or (2) * * * by a corporation * * * which does not maintain an office or other place of business in the District and which has no office, agent, or representative in the District except for the sole purpose of doing business with the United States * * *." D.C.Code (1951), § 47–1551c(h), 61 Stat. 332, 62 Stat. 206, 207. "The measure of the franchise tax shall be that portion of the net income of the corporation * * * fairly attributable to any trade or business carried on or engaged in within the District and such other net income as is derived from sources within the District; Provided further, That income derived from the sale of tangible personal property by a corporation * * * not carrying on or engaging in trade or business within the District as defined * * * shall not be considered as income from sources within the District * * *." D.C.Code (1951), § 47–1580, 61 Stat. 349, 62 Stat. 207.

In our opinion extensive solicitation by salesmen, in the District, which results in a large volume of sales and shipments to customers in the District, is plainly "commercial activity in the District".[1] The corporation was therefore, unless saved by the provisos, "engaging in * * * trade or business within the District" as the Act defines that term. By defining "trade or business" to include "engaging in * * * any * * * commercial activity" as well as engaging in "trade" or "business", Congress plainly intended to go beyond the ordinary concept of "doing business". There could be no other reason for adding the phrase "any * * * commercial activity". The many cases that deal with the

1. Cf. Neild v. District of Columbia, 71 App.D.C. 306, 311–312, 110 F.2d 246, 251–252.

concept of "doing business", usually in connection with service of process, e. g. Mueller Brass Co. v. Alexander Milburn Co., 80 U.S.App.D.C. 274, 152 F.2d 142, are therefore not in point.[2] Because the corporation had an office in the District, and also because it had an officer there, not "for the sole purpose of doing business with the United States", the first statutory proviso quoted above ("*Provided, however * * *")* does not apply. Because the corporation was engaging in business in the District, the second proviso ("*Provided further * * * *")* does not apply. It follows that in our opinion the Board erred in holding that the corporation was not taxable under the statute.

■ (2) On the afternoon of July 19, 1950 the corporation delivered to an examiner in the office of the Assessor of Taxes checks for the amount for which it had been assessed, less $1,000 previously paid, with interest, and a letter protesting the whole tax. On the same day the corporation filed an appeal to the Board of Tax Appeals. Either after the close of business on July 19, or on July 20, the Assessor's office handed on the checks to the office of the Collector of Taxes.[3] The Board ordered refund of the $1,000 originally paid, but thought it lacked jurisdiction of the rest because of a statutory requirement that before the taxpayer appeals to the Board he "shall first pay such tax, together with penalties and interest due thereon, to the collector of taxes of the District of Columbia under protest in writing." D.C.Code (1951), § 47–2403, 52 Stat. 371, as amended; made applicable by D.C.Code (1951), § 47–1593, 61 Stat. 359.

We think the Board had jurisdiction of the entire claim. It was not unusual for tax payments to be deposited in the Assessor's office and handed on to the Collector's office. The Collector himself testified that this was "proper" and "done" though he "would say it is the exception." Interest on a deficiency assessment stops when the amount due reaches the Assessor's office. Income tax payments are treated as timely if they reach that office by the due date.

In view of these circumstances we think deposit of tax checks in the Assessor's office for delivery to the Collector's office was payment "to the collector" within the meaning of the statute. No one would suggest that the statute required payment to the Collector personally, and we think the practices of the two offices obviated any distinction, for present purposes, between employees in his office and employees in the Assessor's office. The case of District of Columbia v. McFall, 88 U.S.App.D.C. 217, 188 F.2d 991, in which the taxpayer failed to protest the tax until after he had filed his appeal to the Board, is not in point.

■ (3) D.C.Code (1951), § 47–2404(a) provides that "The decision of the board may be reviewed by the court * * * if a petition for such review is filed by either the District or the taxpayer within thirty days after the decision is rendered. Such petition for review shall be filed with the board * * *." The Board's decision was rendered April 30, 1951. The taxpayer filed its petition for review, and the clerk of the Board served a copy on the District, shortly before the Board closed its office at 4:45 p. m. on May 31. With the knowledge of the sole member of the Board, who had been consulted by telephone at his home, the District put its cross-petition for review under the door of the Board's office an hour later. A charwoman found it there that night. The Board first stamped the cross-petition as filed June 1 but afterwards, on the District's motion, changed the date to May 31.

We think the District's cross-petition was timely. In Lewis-Hall Iron Works v. Blair, 57 App.D.C. 364, 23 F.2d 972, we held that a petition placed in the mail slot of the United States Board of Tax Appeals after its office had closed for the day was not filed that day. But the United States Board had adopted a rule establishing office hours. The District Board had not. Though it usually closed its office at 4:45 p. m. it was free to close either earlier or later. In McCord v. Commissioner of Internal Revenue, 74 App.D.C. 369, 370, 123 F.2d 164, 165, we said "a full op-

---

2. We imply no opinion as to whether the present taxpayer was or was not within the ordinary concept of "doing business".

3. The Collector's office stamped the tax bill "Jul–20–50".

portunity, an open door, must be maintained for the potential filer until the clock strikes." We agree with the Board that in the absence of established office hours "the clock does not strike until midnight of the last day."

The corporation did not ask the Board to decrease the amount of the assessment. It asked for cancellation of the entire assessment and refund of the entire tax. Its contention was that it was not taxable at all. It made no alternative contention, before the Board or here, to the effect that its tax liability, if any, was less than its assessment. The District of Columbia did not contend, before the Board or here, that the assessment was too low. Accordingly we do not consider the amount of the assessment.

So far as the Board directed a refund its decision is reversed. So far as it denied a refund its decision is affirmed because the corporation was subject to tax, not because of any lack of jurisdiction on the part of the Board.

Reversed in part; affirmed in part.

On Petition for Rehearing.

 We now think it possible, by a liberal construction, to conclude that the corporation raised before the Board the question of the measure of the tax, i. e. the amount of the assessment. These cases are therefore remanded to the District of Columbia Tax Court for consideration of that question. See Lever Brothers Company v. District of Columbia, 92 U.S.App.D.C. —, 204 F.2d 39, decided March 26, 1953.