**NORAIR ENGINEERING ASSOCIATES, INC. and Colonial Construction Corporation of Maryland, Plaintiffs,**

v.

**NOLAND COMPANY et al., Defendants.**

**Civ. A. No. 169–72.**

United States District Court, District of Columbia.

Oct. 24, 1973.

As Amended Oct. 30, 1973.

---

H. Alan Young, Washington, D. C., for plaintiffs.

Thomas H. McGrail, Alexander M. Heron, Washington, D. C., for defendant Noland.

James C. Gregg, Washington, D. C., for defendant Tubotron.

Leonard H. Becker, Austin F. Canfield, Jr., Washington, D. C., for defendants Crucible Steel Co. of America, Cru Del Corp., Crucible Steel Corp., Crucible, Inc., Cru Colt Corp., and Colt Industries, Inc.

Samuel F. McNeil, III, Washington, D. C., for defendant Lake Chemical.

Myron Solter, Washington, D. C., for defendant Building Officials Conference.

## MEMORANDUM–ORDER

GASCH, District Judge.

This matter came before the Court upon motions of various defendants to quash service and/or to dismiss the cause of action as to them. For purposes of these motions, defendant Noland,

over whom this Court admittedly has jurisdiction, agreed with plaintiffs. The key question involved here is whether or not this Court can exercise personal jurisdiction over foreign corporations under the facts of this case and either 13 D.C.C. § 422 or the District of Columbia "long-arm" statute, 13 D.C.C. § 423.[1]

This suit arose after plaintiff Colonial Construction Corp. was forced to replace certain steel tubing, known as Ti-Chrome stainless, in a housing project in Martinsburg, West Virginia, because the tubing developed flaws that made it unsuitable for the use intended. Plaintiff Norair Engineering procured the tubing for Colonial; the two companies sued in this Court, naming as defendant the Noland Company, distributor of the material to plaintiffs. Noland filed a third-party complaint against Tubotron, Inc., the manufacturer of the tubing. Later, leave was granted for an amended complaint, and the following defendants were named: Lake Chemical Company, Inc. (manufacturers of flux and solder used with the tubing), Crucible Steel Company of America, Cru Del Corporation, Crucible Steel Corporation, Crucible, Inc., Cru Colt Corporation, and Colt Industries (names through various reorganizations of the companies that manufactured the steel from which Tubotron fashioned the tubing), and Building Officials Conference of America (BOCA) (an association which tested and approved the tubing).

First, this action is hereby dismissed as to the following defendants, who are no longer in existence due to various corporate reorganizations by Crucible, Inc., and Colt Industries: Crucible Steel Company of America, Cru Del Corporation, Crucible Steel Corporation, and Cru Colt Corporation.

Defendant Tubotron is currently proceeding in bankruptcy in the Southern District of New York, and the referee in bankruptcy there has issued an order staying all other lawsuits as to Tubotron. As a result, Tubotron does not actively contest the jurisdiction of this Court; all other defendants, with the exception noted above of the Noland Company, contend that this Court is without jurisdiction over them, even under the most generous view of 13 D.C.C. §§ 422 or 423.

■ There is no hard and fast rule as to when a court can and cannot reach a foreign corporation; each case must be examined upon its merits in light of the applicable statute. Considering 13 D.C.C. § 422 this Court finds it has no jurisdiction over the remaining defendants (other than Noland Company) as no satisfactory showing has been made that any of those defendants maintain a business domicile in the District of Columbia. For these purposes, the Court feels the office maintained by Colt Industries and Crucible, Inc., in Washington falls within the well-recognized exception of Mueller Brass Co. v. Alexander Milburn Co., 80 U.S.App.D.C. 274, 152 F.2d 142 (1945), as an office staffed

I. The statutes read:
§ 13–422. Personal jurisdiction based upon enduring relationship
A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief.
§ 13–423. Personal jurisdiction based upon conduct
(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia;
(2) contracting to supply services in the District of Columbia;
(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; . . . . .

for the purpose of maintaining contact with agencies of the United States Government.

The more serious question is whether jurisdiction can be exercised under the long-arm statute. Section 423(a)(1) reads:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia; . . . .

It would be difficult to say that the transaction underlying this tort occurred in the District of Columbia in respect to any defendant other than Noland. The tubing was not installed here, nor did it pass through the District. The sale was arguably consummated here, but that does not bring § 423 (a)(1) to bear against any other defendants, as there has been no showing that Noland was an agent for any of them in this transaction. Thus, this case is distinguishable from Liberty Mutual Insurance Co. v. American Pecco Corp., 334 F.Supp. 522 (D.C.1971), where this Court held that it had personal jurisdiction over a West German manufacturer (Peiner) despite the fact that the manufacturer sold his goods to a New York concern that acted as distributor, because the distributor was Peiner's sole agent in the United States and Peiner knew its distributor did business in the District of Columbia. Similar facts as to the defendants here have not been alleged.[2]

Turning to § 423(a)(4), personal jurisdiction can be exercised over one who causes

tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue

from goods used or consumed, or services rendered, in the District of Columbia;

.  .  .  .  .  .  .

Here, plaintiffs seek to establish the necessary nexus with the District of Columbia by asserting that the injury to them occurred when they had to borrow money and reach into the reserves of their organizations to replace the faulty tubing. Since plaintiffs' principal place of business is in the District, and the funds borrowed were from a District institution, plaintiffs claim that the injury to them occurred in the District of Columbia. Apparently plaintiffs rely on the wording "tortious injury" in the long-arm statute to indicate that the injury can occur in a locale other than that of the tort. In light of the present facts, the Court will not adopt such an interpretation. The purpose of § 423 (a)(4) is to insure that a District of Columbia court would be able to exercise jurisdiction where a foreign manufacturer's product failed and caused injury in the District—as was the case in *Liberty Mutual*. That is not the case here.

Since there is no tortious injury in the District, it is unnecessary to consider the many points raised by counsel as to the extent to which the defendants "do business" in or "derive substantial revenue" from the District of Columbia. 28 U.S.C. § 1404(a) permits this Court to transfer a civil action to any other district in which the case may have been brought. Since the tort occurred in West Virginia, and it appearing that the defendants who successfully contest this Court's jurisdiction would be subject to the jurisdiction of the West Virginia District Court, such a change of venue would be appropriate. Accordingly, it is by the Court this 24th day of October, 1973,

Ordered that the "Crucible defendants," previously noted as being no longer in existence, be dismissed; and it is further

---

2. *Liberty Mutual*, it should also be noted, actually turned on § 423(a)(4) rather than

(a)(1); the analogy on the point of agency is nonetheless valid.

Ordered that defendants Lake Chemical Company, Inc., Crucible, Inc., Colt Industries, Inc., and Building Officials Conference of America be dismissed from this action, and it is further

Ordered that this cause of action, now styled Norair Engineering Associates, Inc., and Colonial Construction Corp. v. Noland Company and Tubotron, Inc., be transferred to the Northern District of West Virginia, pursuant to 28 U.S.C. § 1404(a).