**LEX TEX LTD., INC., Appellant,**

v.

**Henry Howson SKILLMAN, et al., Appellees.**

No. 89–570.

District of Columbia Court of Appeals.

Argued March 1, 1990.

Decided Aug. 22, 1990.

Daniel E. Schultz, Washington, D.C., with whom James Crabtree was on the brief, for appellant.

David P. Durbin, with whom Paul D. Krause and Jayson L. Spiegel, Washington, D.C., were on the brief, for appellees.

Before ROGERS, Chief Judge, and STEADMAN and FARREL, Associate Judges.

STEADMAN, Associate Judge:

In this certified question proceeding, we are asked to interpret the District of Columbia "long-arm" statute. D.C.Code § 13–423 (1989).

A Florida corporation has brought suit in the United States District Court for the District of Columbia against a Pennsylvania attorney and the partners of his law firm, alleging malpractice in legal representation before the United States Patent and Trademark Office, located at all relevant times in the District of Columbia. The basis for alleging jurisdiction is our statute that provides that a District of Columbia court may exercise personal jurisdiction over a person "as to a claim for relief arising from the person's ... transacting any business in the District of Columbia." D.C.Code § 13–423(a)(1).

That the Pennsylvania attorney and, through him, his law firm "transact[ed] business" in the District of Columbia in the ordinary meaning of the phrase cannot be gainsaid. The legal question now before us arises because of a possible limitation imposed on the exercise of personal jurisdiction in the District of Columbia by the so-called "government contacts" principle. We hold that that principle does not apply to the facts before us.

the new context which will arise as the evidence is presented once again.

## I

Plaintiff-appellant in this case, Lex Tex Ltd., Inc. ("Lex Tex"), a Florida corporation with its principal place of business in Florida, is the assignee of two patents protecting textile manufacturing processes. The original owner of the patents retained defendant-appellee Henry Howson Skillman and his law firm, Howson & Howson, in 1957 to prosecute the patent applications before the United States Patent and Trademark Office (the "Patent Office" or the "Office"), then located in the District of Columbia.[1] Skillman was both a partner at Howson & Howson and a citizen of Pennsylvania at all relevant times. Howson & Howson is a law partnership with its office in Pennsylvania. Appellee Skillman successfully prosecuted the applications and both were issued in 1963.

Lex Tex was assigned the patents and discovered sometime thereafter that they were apparently being infringed. Lex Tex brought suit in the United States District Court for the Southern District of Florida and in 1982 won a verdict for nearly nine million dollars against the infringers of one of the patents. On appeal, however, the United States Court of Appeals for the Federal Circuit reversed, *J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553 (Fed.Cir. 1984), *cert. denied*, 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985), concluding that Lex Tex's assignor, through its lawyers, had obtained the patent from the Patent Office by means of "inequitable conduct" and that the patent was therefore unenforceable. *Id.* at 1567. Likewise, in a separate action, another court concluded that the second patent had also been obtained by inequitable conduct. *Lex Tex Ltd. v. American Barmag Corp.*, 4 U.S.P.Q.2d 1273 (W.D.N.C.1987). Lex Tex then brought suit against Skillman and the other partners of the Howson & Howson firm.[2] Appellant alleged that Skillman acted negligently, wilfully and wantonly, and in breach of his contract with appellant's assignor by failing to disclose to the Patent Office the existence of prior art, which was "known or in the exercise of reasonable care should have been known" to Skillman. Appellant claimed that Skillman's actions had resulted in "substantial economic loss due to the unenforceability" of the patents.[3]

The United States District Court dismissed the complaint on the ground that it did not have personal jurisdiction over the defendants. The court held that the so-called "government contacts exception" to the District of Columbia "long-arm" statute applied, noting that Skillman's "function before [the Patent] Office was as an agent of individuals seeking the government's permission to do something, which could only be done in Washington because that is where the Patent Office was located."

Lex Tex appealed and the United States Court of Appeals for the District of Columbia Circuit certified the following question to us pursuant to D.C.Code § 11–723 (1989):

> The question of law to be answered is this: Under D.C.Code § 13–423(a)(1), (b), and in view of the "government contacts" exception, is personal jurisdiction properly asserted in the District of Columbia in a suit by a Florida corporation against an attorney who resides in Pennsylvania based on these key allegations: (1) the defendant filed misleading documents and information with the United States Patent and Trademark Office

1. The Office moved to Virginia in April of 1967.

2. The suit was originally brought in the Superior Court of the District of Columbia but was removed to the United States District Court here on diversity grounds.

3. In addition, appellant alleged that Skillman acted negligently or culpably when he appeared before a reissue examiner and failed at that point to disclose to appellant, who by this time had succeeded to the patents, that he had "engaged in gross negligence or reckless conduct in connection" with the initial patent applications. Such disclosure, appellant contended, would have induced appellant to settle with the allegedly infringing parties rather than pursue litigation with its attendant expense. We note that appellee's appearance before the reissue examiner would have taken place outside the District of Columbia, the Patent Office having moved to Virginia in 1967. See note 1, *supra*.

(Patent Office) at a time when that Office was located in the District of Columbia; and (2) the misleading filings caused plaintiff to sustain substantial economic loss. In other words, does the "government contacts" exception to the exercise of personal jurisdiction over nonresidents apply when the defendant's contacts with the government themselves constitute the alleged culpable or liability-generating conduct for which plaintiff seeks to recover.

## II

The question that we deal with here concerns the proper application of the principle, broadly stated, that "mere entry [into the District of Columbia] by non-residents for the purpose of contacting federal government agencies cannot serve as a basis for in personam jurisdiction." *Rose v. Silver*, 394 A.2d 1368, 1370 (D.C.1978), *reh'g denied*, 398 A.2d 787 (D.C.1979). The principle, referred to as the "government contacts" principle, originated in the context of a statute providing for service of process on foreign corporations. Act of March 3, 1901, ch. 854, § 1537, 31 Stat. 1189, 1419 (most recently codified at D.C. Code § 13–103 (1961)), *repealed by* Act of Dec. 23, 1963, Pub.L. No. 88–241, § 21(a), 77 Stat. 478, 624.[4] That statute provided in pertinent part that when a foreign corporation is "doing business" in the District of Columbia, service on the corporation's local

agent "shall be effectual to bring the corporation before the court."[5] The concept of "doing business" in essence involved a continuing corporate presence and required a fairly "'systematic and continuous course of conduct'" in the District of Columbia. *Rose, supra*, 394 A.2d at 1373 (quoting *Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 813 n. 10 (D.C.1976) (en banc)). *See AMAF Int'l, supra* note 4, 428 A.2d at 851 (stating, in the context of D.C. Code § 13–334, the present "doing business" statute, that "doing business" means "any continuing corporate presence in the forum state directed at advancing the corporation's objectives"). Mere contacts with the federal government, however, were generally understood not to constitute "doing business." *See, e.g., Weisblatt v. United Aircraft Corp.*, 134 A.2d 713, 715 & n. 2 (D.C.1957); *Mueller Brass Co. v. Alexander Milburn Co.*, 80 U.S.App.D.C. 274, 276, 152 F.2d 142, 144 (1945). *See also Fandel v. Arabian Am. Oil Co.*, 120 U.S.App.D.C. 193, 195, 345 F.2d 87, 89 (1965) (stating that contacts with the government of a sort "not ... customarily associated with strictly commercial operations" do not constitute "doing business" under the statute). This reading of the phrase "doing business" was particularly understandable given that the early cases often involved claims for relief that were unrelated to the defendants' contacts with the government. *See Traher v. De Havilland Aircraft of Cana-*

---

4. In the same act which repealed the prior service of process statute, Congress enacted a new service of process statute substantially identical to the repealed provision. Act of Dec. 23, 1963, § 1, 77 Stat. 478, 513. This statute still exists and is codified at D.C.Code § 13–334 (1989). The original service of process statute has been characterized as the "predecessor" to the "long-arm" statute, D.C.Code § 13–423, and "'continues to exist as a basis for personal jurisdiction alongside the more comprehensive long-arm provisions in ... the D.C.Code.'" *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 851 n. 2 (D.C.1981) (per curiam) (quoting *Ramamurti v. Rolls–Royce Ltd.*, 454 F.Supp. 407, 409 n. 2 (D.D.C.1978), *aff'd*, 198 U.S.App.D.C. 92, 612 F.2d 587 (1980)). *See* D.C.Code § 13–401 (1989) (chapter containing present "long-arm" statute "shall be construed to augment, and not to repeal, any other law of the District of Columbia authorizing another basis of jurisdiction").

5. A second paragraph was added to the statute in 1902 providing:

When a foreign corporation shall transact business in the District without having any place of business or resident agent therein, service upon any officer or agent or employee of such corporation in the District shall be effectual as to suits growing out of contracts entered into or to be performed, in whole or in part, in the District of Columbia or growing out of any tort committed in the said District. Act of June 30, 1902, Pub.L. No. 206, § 1537, 32 Stat. 520, 544. A substantially identical codification of this provision exists at D.C.Code § 13–334(b) (1989). The cases out of which the "government contacts" principle arose did not involve interpretations of this provision.

*da, Ltd.,* 111 U.S.App.D.C. 33, 34, 294 F.2d 229, 230 (1961) (per curiam), *cert. denied,* 368 U.S. 954, 82 S.Ct. 397, 7 L.Ed.2d 387 (1962); *Mueller Brass, supra,* 80 U.S.App. D.C. at 274, 152 F.2d at 142. In such instances, assertions of personal jurisdiction could raise serious due process concerns. *See, e.g., Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (where cause of action does not "arise out of" defendant's activities in forum, defendant must have "continuous and systematic" contacts with forum for assertion of personal jurisdiction to meet due process).[6] Thus, in the early cases that adumbrated the "government contacts" principle, the principle "was a way of articulating a limitation" on the service of process statute that served, at least in part, a due process purpose. *Rose, supra,* 394 A.2d at 1374. *See, e.g., Mueller Brass, supra,* 80 U.S. App.D.C. at 275 & n. 1, 152 F.2d at 143 & n. 1 (concluding that Michigan corporation was not "doing business" in the District when it maintained a representative here "for the purpose of gathering information from Government departments and agencies" and noting that even "[w]ithout the ["doing business"] statute the question would still be present as a jurisdictional requisite to Constitutional due process").

In 1970, a "long-arm" statute was enacted that supplemented the service of process on foreign corporations statute. District of Columbia Court Reorganization Act of 1970, Pub.L. No. 91–358, § 132(a), 84 Stat. 473, 549. The "long-arm" statute provides in pertinent part: "A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's ... transacting any business in the District of Columbia." D.C.Code

§ 13–423(a)(1) (1989). In addition, the statute states: "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." *Id.* § 13–423(b). Section 13–423 by its terms thus limits assertions of personal jurisdiction to claims "arising from" the transacting of business in the District of Columbia[7] and thereby avoids the kind of potential due process problems presented by the older service of process statute.

Despite the due process safeguards built into the new "long-arm" statute, this court in two cases has affirmed the continuing applicability of the "government contacts" principle. In *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d 808 (D.C.1976) (en banc), the defendants were out-of-state corporations that did no business whatever in the District of Columbia. The plaintiff, a District of Columbia corporation, had undertaken to perform services in the District of Columbia to assist the defendants in obtaining funding from the Environmental Protection Agency ("EPA"). The plaintiff alleged breach of contract and sought to recover the value of the services performed by it. We held first that the plaintiff was an "independent contractor," *id.* at 812 n. 7, and could not rely on its own activities to establish any contact between the defendants and the District. The only other connection between the defendants and the District was two visits by personnel of the defendants to meet with EPA officials about the funding. Because of the "government contacts" principle, we held that these visits did not amount to the "transaction of business" for purposes of our "long-arm" statute. *Id.* at 813. The "government contacts" principle, we said,

---

**6.** Moreover, the traditional "presence" requirement of *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1878), would not have been refined by *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny at the time some of the old cases were decided. The *Pennoyer* understanding of personal jurisdiction would have dictated a strict reading of "doing business."

**7.** A District of Columbia court might, of course, have jurisdiction over a claim not arising from the transacting of business here under another provision, such as D.C.Code § 13–422 ("[a] District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief") or D.C. Code § 13–334. See note 4, *supra.*

finds its source in the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry. To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum.

*Id.* (footnote omitted).

In *Rose, supra,* we explored further the basis and scope of the "government contacts" principle. In that case, the plaintiff, an attorney, entered into a contract with the defendants to negotiate with the Food and Drug Administration, then located in the District of Columbia, and if necessary to bring litigation here. The defendant parties to the contract were a Connecticut corporation and its president, a Connecticut resident. The suit, brought in the Superior Court of the District of Columbia, sought compensation for services performed under the contract and consequential damages. We held that, in contrast to the plaintiff in *Environmental Research International,* the plaintiff in *Rose* was acting as an "agent" of the defendants in his activities in the District, *Rose, supra,* 394 A.2d at 1371, and therefore the defendants were, through the agent, "transacting business"

in the District "within the usual meaning of that concept." *Id.* at 1372. Thus, since the plaintiff's claim arose out of business vicariously transacted by the defendants in the District, the defendants were reachable under the "long-arm" statute "consistent with traditional due process analysis." *Id.* at 1373.

The issue then reached in *Rose* was whether the "government contacts" principle is "based upon something more than due process." *Id.* We noted that although "[h]istorically, ... the government contacts principle emerged to protect entities against claims by third parties based on transactions unrelated to the entity's special government purpose in the District of Columbia," *id.* at 1374 n. 6, our prior cases had also reflected a "First Amendment gloss," in particular to protect the right "to petition the government for a redress of grievances, without fear of the threat of suit if [the defendant's] contacts were limited to asserting that constitutional right." *Id.* at 1374. In the absence of a due process justification, we said, "the First Amendment provides the only principled basis for exempting a foreign defendant from suit in the District of Columbia, when its contacts are covered by the long-arm statute and are sufficient to withstand a traditional due process attack." *Id.*[8] Thus, we in essence recognized First Amendment considerations[9] as defining and protecting the "unfettered access to

---

**8.** Because the defendants in *Rose* had "not asserted that long-arm jurisdiction would violate the First Amendment," we did not rule on the ultimate applicability of the "government contacts" principle in that case but afforded the defendants an opportunity on remand to show that they had a First Amendment right at stake. *Rose, supra,* 394 A.2d at 1374.

**9.** The First Amendment right to petition has been understood broadly to extend "to all departments of the Government," *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 612, 30 L.Ed.2d 642 (1972), including executive departments, *Naartex Consulting Corp. v. Watt,* 232 U.S.App.D.C. 293, 301, 722 F.2d 779, 787 (1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984), administrative agencies, *Trucking Unlimited, supra,* 404 U.S. at 510, 92 S.Ct. at 611, and the judiciary, *Bill Johnson's Restaurants, Inc. v.*

*NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161, 2168, 76 L.Ed.2d 277 (1983), as well as legislatures and the Congress. In addition, the right to petition may include activities before governmental agencies designed to protect commercial or proprietary interests. *See Naartex, supra,* 232 U.S.App.D.C. at 301, 722 F.2d at 787. *Cf. Thomas v. Collins,* 323 U.S. 516, 531, 65 S.Ct. 315, 323, 89 L.Ed. 430 (1945) (the First Amendment is not "wholly inapplicable to business or economic activity").

Furthermore, while *Rose* emphasized "redress of grievances," First Amendment issues pertaining to free speech and a free press may also be relevant in appropriate cases. *Cf. Neely v. Philadelphia Inquirer Co.,* 61 App.D.C. 334, 336, 62 F.2d 873, 875 (1932) ("mere collection of news material" in the District of Columbia held not to be "doing of business" for purposes of the service of process statute).

federal departments and agencies" and "free public participation in government," which had been major concerns in *Environmental Research International.*[10]

## III

We apply the teachings of these holdings to the facts of the case before us.[11] Here, there can be no serious question but that the defendants (appellees) were "transacting business" within the District "within the usual meaning of that concept," *Rose, supra,* 394 A.2d at 1372, and that the litigation here arises from the transacting of that business. Skillman, a partner of Howson & Howson, was present in the District of Columbia and appeared personally before the Patent Office on behalf of Lex Tex's predecessor in interest. These contacts were not substantially different from those of the plaintiff lawyer in *Rose,* whom we held to be an agent of the out-of-state corporation and whose activities, undertaken in this capacity, we held to be sufficient to meet due process requirements of "minimum contacts."[12]

We must thus determine whether the defendants can assert a First Amendment interest stemming from their legal representation before the Patent Office, thereby permitting invocation of the "government contacts" principle.[13] This lawsuit, unlike the lawsuits in *Environmental Research International* and *Rose,* is by the out-of-state entity against its own agent acting within the District of Columbia on the out-of-state entity's behalf on a cause of action directly related to that activity. Thus, permitting litigation in the District of Columbia clearly does not threaten any rights of the plaintiff to petition for redress of grievances or otherwise to engage in First Amendment activity. If anything, it enhances them. Nor do the defendants have any claim to immunity from jurisdiction based on First Amendment rights of their own. The activities which are the very basis of the suit here were undertaken in the defendants' capacity as the agent of and on behalf of the plaintiff's predecessor in interest.[14] *See Rose, supra,* 394 A.2d at

10. *Id.* at 813. With respect to the remaining concern expressed in *Environmental Research International,* a further consequence of precluding assertions of personal jurisdiction where First Amendment considerations are involved is to reduce a threat of the District of Columbia courts' becoming a "national judicial forum." *Environmental Research Int'l, supra,* 355 A.2d at 813. We note that we have recently said that the District of Columbia's concern with avoiding " 'congestion of its court dockets with foreign litigation' " is a proper consideration in determining whether to dismiss on the ground of *forum non conveniens, Dunkwu v. Neville,* 575 A.2d 293, 294 (D.C.1990) (quoting *Jenkins v. Smith,* 535 A.2d 1367, 1369 (D.C.1987) (en banc)), as is the fact of a plaintiff's or defendant's not being a resident of the District of Columbia. *Id.* at 294–95. *See Mills v. Aetna Fire Underwriters Ins. Co.,* 511 A.2d 8, 10–11 (D.C.1986). *See also* D.C.Code § 13–425 (1989) (if "court finds that in the interest of substantial justice the action should be heard in another forum," court may dismiss action "on any conditions that may be just").

11. The United States Court of Appeals for the District of Columbia Circuit has certified a specific "question of law" for us pursuant to D.C. Code § 11–723. However, in responding to a certified question, "we may exercise our prerogative to frame the basic issues as we see fit for an informed decision," *Penn Mutual Life Ins. Co. v. Abramson,* 530 A.2d 1202, 1207 (D.C.1987),

especially where, as here, there exists a ground of decision which we deem to be "dispositive." *Id.*

12. We note that the District Court in this case explicitly characterized Skillman as an "agent" of the original patent owner.

13. We note that any threat to the exercise of First Amendment rights would stem solely from concern over the venue of litigation and not from concern over litigation as such. Personal jurisdiction over a defendant able to invoke the "government contacts" principle would presumably exist in some jurisdiction somewhere.

14. Of course, in some circumstances, a lawyer may have First Amendment interests of his or her own, for example, in advertising or political expression, which might afford the protection of the "government contacts" principle. *See, e.g., Shapero v. Kentucky Bar Ass'n,* 486 U.S. 466, 472, 108 S.Ct. 1916, 1921, 100 L.Ed.2d 475 (1988) ("[l]aywer advertising is in the category of constitutionally protected commercial speech"); *In re Primus,* 436 U.S. 412, 428, 431, 98 S.Ct. 1893, 1902, 1904, 56 L.Ed.2d 417 (1978) (lawyer affiliated with ACLU was exercising her own right to " 'political expression' and 'political association' " and therefore her solicitation to a prospective client was held to fall "within the generous zone of [ACLU's] First Amendment protection reserved for associational free-

**250**

1372 ("[i]n general, the relation of attorney and client is one of agency and the general rules of law applicable to agencies apply" (internal quotation marks omitted)). To the extent, then, that any petitioning of the government was taking place, it was that of the appellant, not appellees.

This agency relationship alone serves to distinguish this case from *Naartex, supra* note 9, on which the United States District Court relied, at least in part. In *Naartex,* certain of the defendants were out-of-state individuals and entities alleged to have improperly obtained an oil and gas lease from the Wyoming State Office of the Bureau of Land Management, an agency of the United States. The court held that the defendants were "petitioning the government" when they appeared in the District of Columbia before the United States Department of the Interior as part of their effort to acquire the lease and that the "government contacts" principle therefore applied. *Naartex, supra* note 9, 232 U.S.App.D.C. at 301, 722 F.2d at 787. However, in *Naartex* the defendants themselves appeared before the governmental agency to exercise their own right of petition in contrast to the present case, in which the defendant lawyer was petitioning on his client's behalf, not his own. Moreover, as the court noted in *Naartex,* the claim in that lawsuit did not arise out of conduct that occurred in the District of Columbia: "the conspiracy Naartex sought to redress occurred outside the [D]istrict—most likely in Wyoming, where the [lease] lottery and the alleged [improper] filings took place." *Id.,* 232 U.S.App.D.C. at 301 n. 14, 722 F.2d at 787 n. 14.

In sum, one can hardly demand the right to come to the District of Columbia to pursue activities exclusively on behalf of an out-of-state principal and expect to be absolutely immune from suit here by that principal for causes of action arising directly out of the performance of such activities. The "government contacts" principle does not extend so far.[15]

---

doms"); *NAACP v. Button,* 371 U.S. 415, 428–29, 83 S.Ct. 328, 335–36, 9 L.Ed.2d 405 (1963) (NAACP understood to have First Amendment associational rights "on its own behalf" implicated in its legal representation of victims of racial segregation). In the present case, however, we do not see how it can plausibly be said that appellees' own interests in advertising or political expression have been implicated.

**15.** The argument that the defendants here cannot pursue their occupation except by coming to the District, *cf. Geldermann & Co. v. Dussault,* 384 F.Supp. 566, 572 (N.D.Ill.1974), where the federal government agencies are situated, pushes the concept too far. Numerous activities can only be undertaken at certain locales. Pushed to its limit, the concept would render the "government contacts" principle a blanket prohibition against assertions of personal jurisdiction in all cases involving interplay with the federal government, a proposition we rejected in *Rose.*